WILLIAM J. BURNETT, Respondent, *v.* C. BROWN SNYDER, Impleaded, etc., Appellant.

The participation in the profits of a business does not in all cases make the participant a partner as to third persons; to have that effect the participation must be in the profits *as such*, under circumstances which give him a proprietary right as principal trader in such profits before division.

A contract between one of two or more partners and a third person, with the knowledge and assent of the other partners, by which the third person is to share in the profits and losses, in the firm business, of the partner with whom he contracts, does not constitute such a participation in the profits as will make the third person a partner, or liable for the partnership debts.

(Argued June 3, 1880; decided September 21, 1880.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 13 J. & S. 577.)

This action was brought upon an account against the firm

of Strang, Platt & Co., of which firm defendants were alleged
to be members.

Defendant Snyder alone appeared and answered, denying
that he was a partner. The facts are sufficiently stated in the
opinion.

*William G. Wilson* for appellant. The defendant Snyder
was not a partner in the firm in question. (*Burnett* v. *Sny-
der,* 76 N. Y. 344.) It is not essential that an agreement
of sub-partnership, to be valid, should be secret. (*Frost* v.
*Moulton,* 21 Beavan, 596; *Ex parte Barrow,* 2 Rose, 252; *Bray*
v. *Fromont,* 6 Madd. 5; *Brain* v. *De Tastet,* Jacob, 284;
*Reynolds* v. *Hicks,* 19 Ind. 113.)

*Aaron Pennington Whitehead* for respondent.

ANDREWS, J. The case of *Burnett* v. *Snyder et al.* (76 N.
Y. 344) was an action brought to recover a debt owing by
the firm of Strang, Platt & Co., to the plaintiff, and Snyder
was made a defendant upon the allegation that he was a co-
partner with the other defendants in that firm. In that case
the plaintiff, to sustain the averment that Snyder was a
partner, relied upon a written agreement, made December 31,
1869, between Snyder and Peter O. Strang and Ammon Platt,
two of the members of the firm of Strang, Platt & Co., exe-
cuted concurrently with the creation of the partnership, which
recited that it was deemed expedient that Snyder should have
an interest in and become a copartner in the firm, and which
contained a stipulation that Snyder should be entitled to receive
one-third of the profits earned and received by Peter O. Strang
and Ammon Platt from their interest in the firm of Strang,
Platt & Co., and become liable for and pay to them an amount
equal to one-third of any losses they, or either of them, might
sustain by reason of their connection as copartners, or other-
wise, with the firm of Strang, Platt & Co. It was claimed
on the part of the plaintiff that Snyder was a partner by
the express terms of the agreement, and also that if, as be-

tween himself and the other members of the firm of Strang, Platt & Co., he was not a partner, he was a partner as to creditors by reason of a right under his agreement to a participation in the profits. The court decided against the plaintiff upon both propositions, and held that an agreement between one of several members of a firm and a third person, that the latter should be a copartner in the firm did not in law make him a copartner, and that an agreement between one member of a firm and a third person that the latter should be entitled to a share of the profits received by the firm, and pay an equivalent share of his losses, was not such a participation in the profits as to constitute the person receiving such share a partner as to third persons, or make him liable for the firm debts.

This action is one of a series of actions commenced by the plaintiff against the successive firms of Strang, Platt & Co., which firm was first organized in 1863, and reorganized December 31, 1869, and again in May, 1870, to recover debts contracted by the several firms to the plaintiff. The debt sought to be recovered in this action was contracted by the original firm, which remained as originally constituted until the reorganization in December, 1869, except that Ryley, one of the original partners, died in 1867, and his interest was continued by his administrators. The case above referred to was brought to recover the debt to the plaintiff contracted by the firm of December, 1869.

The referee in this case found as a fact that the defendant Snyder was a partner in the original firm of Strang, Platt & Co. If this finding is not sustained by the evidence, it becomes the duty of the court to reverse the judgment.

It is not claimed that the judgment can be sustained on any theory of estoppel. Snyder did not hold himself out as a partner. The plaintiff, while the debt for which this action is brought was accruing, was a clerk in the employment of Strang, Platt & Co., but he did not know, nor did he suppose during this time that Snyder was a member of the firm, nor was he informed that he was a partner until 1874, several

years after the final dissolution of the firm. His ignorance of course is immaterial, if in fact or law Snyder was a partner, but the duty of establishing that relation, in the absence of any holding out by Snyder that he was a partner, is upon the plaintiff. The original firm of Strang, Platt & Co. was constituted by written articles of copartnership between Peter O. Strang, Ammon Platt and George W. Ryley. By this instrument these persons constituted the firm. Snyder was not a party to it, and, so far as the written agreement of copartnership indicates, he was not a partner in the concern. The finding that Snyder was a partner is based upon the fact that, concurrently with the formation of the copartnership, it was arranged that Snyder should be jointly interested with Ryley in his interest in the firm, that is to say, that Snyder should be entitled to receive one-half of Ryley's profits, and should be liable for one-half of his losses. This arrangement, so far as appears, was not evidenced by any writing executed by the parties. The draft of an agreement was prepared between Ryley and Snyder, conforming to the terms of the oral arrangement, but was not produced, and it does not appear to have been signed.

While the negotiation for forming the partnership was going on, Strang, Platt and Ryley expressed a desire that Snyder should become interested in the proposed business. The business contemplated was the wool brokerage and commission business, and Snyder was a large dealer in wool on his own account, and as purchasing agent for mills with which he was connected. It was at first proposed to Snyder that he should become a copartner in the firm. For prudential reasons, growing out of his relations with third parties, Snyder declined the proposition to become a partner. His refusal to become a partner had no connection with the question of the liability which he would incur to creditors by becoming a partner. It was then proposed that he should take a share of Ryley's interest, and the arrangement was concluded on that basis. The evidence shows that the agreement finally made, so far as Snyder was concerned, was an agreement between him and

Ryley, made with the knowledge and concurrence of Strang and Platt, the other members of the firm, and in this respect the case differs from the former one. The business of the firm did not require the contribution of capital and none was contributed by any of the partners. Snyder aided the firm by purchases and consignments of wool, but so far as appears, took no part in the management of the business. The question arises upon these facts, whether Snyder was a partner in the firm, or if not a partner as between himself and the other persons interested, was he such as to creditors.

In *Grace* v. *Smith* (2 Wm. Bl. 998) and *Waugh* v. *Carver* (2 H. Black. 235) the doctrine was declared, and was deemed to be settled by these cases that a participation in the profits of a trade made one liable as a partner to third persons by operation of law, although he was not ostensibly a partner, and although the partnership relation was excluded by the terms of the agreement between him and his associates. This doctrine was followed in England, and was regarded as the true test of partnership as to third persons until the case of *Cox* v. *Hickman* (8 House of Lords Cases, 301), in which the doctrine was strongly impugned if not wholly overthrown. It was held in that case that partnership was a branch of the law of principal and agent, and that persons who share the profits of a business do not incur the liabilities of partners unless the business is carried on by them personally, or by others as their real or ostensible agents. The defendants in that case, who were creditors of an insolvent firm carrying on business as the Stanton Iron Works, became parties to a deed of assignment executed by them, and by their debtors, whereby the latter conveyed their property to trustees in trust to carry on the business theretofore carried on by the debtors in the name of the Stanton Iron Company, with power to the trustees to enter into contracts relating to the business, and to divide the net income among the creditors in ratable proportions, and it was held that the creditors who executed the deed were not partners in the business, and were not liable upon bills of exchange accepted by one of the trustees in the name of the company for iron ore·

purchased and used by them in the business. But we have in this State adhered to the general doctrine established by the earlier English cases, and although it proceeds upon reasons which have not been considered entirely satisfactory, it was applied by this court in the recent case of *Leggett* v. *Hyde* (58 N. Y. 272). But the participation in the profits of a trade which makes a person a partner as to third persons is a participation in the profits *as such*, under circumstances which give him a proprietary interest in the profits before division as principal trader (*Ex parte Hamper*, 17 Vesey, 404; Story on Part., § 49; Parsons on Part. 74), and the right to an account as partner, and a lien on the partnership assets in preference to individual creditors of the partner. (*Champion* v. *Bostwick*, 18 Wend. 184; 3 Kent, 25; 1 Smith's Leading Cases, 984.) It is not every participation in the profits which will make one a partner. Numerous exceptions to the rule have been established. (See *Vanderburgh* v. *Hull*, 20 Wend. 70; *Burckle* v. *Eckhart*, 3 Comst. 132; *Richardson* v. *Hughitt*, 76 N. Y. 55.) The contract of sub-partnership, which is a contract between one of two partners and a third person by which the latter is to share the profits, or the profits and losses of the partner with whom the contract is made in the firm business, does not constitute such a participation in the profits as will make the person contracting with the partner, a partner in the firm, or liable for the partnership debts. In *Ex parte Barrow* (2 Rose, 252) Lord ELDON said: "I take it to have been long settled that a man may become a partner of A., when A. and B. are partners, and yet not be a member of that partnership which existed between A. and B. In the case of *Sir Charles Raymond*, a banker in the city, a Mr. Fletcher agreed with Sir Charles Raymond that he should be interested so far as to receive a share of the profits of the business, and which share he had a right to draw out from the firm of Raymond & Co. But it was held that he was no partner in that partnership; had no demand against it; had no account in it; and that he must be satisfied with a share of the profits arising and given to Sir Charles Raymond." (See, also, *Bray* v.

*Fromont*, 6 Madd. 5 ; *Killock* v. *Greg*, 4 Russ. 285 ; *Frost* v. *Moulton*, 21 Beav. 596 ; Coll. on Part., § 27 [6th ed.].)

It has been said that the English cases only show that, as between the members of the firm *inter sese*, the party contracting for the profits of one of the parties is not a partner, and Mr. Lindley, referring to the subject, remarks, that before the decision of the House of Lords, in *Cox* v. *Hickman*, a sub-partner might, *perhaps*, have been liable to the creditors of the principal firm, by reason of his participation in the profits. (Lindley on Part. 55.) The doubt expressed by this author was resolved in this court by our former decision.

Applying in this case, to the ostensible agreement made between Snyder and Ryley, the test of partnership adopted in *Grace* v. *Smith*, as explained in the subsequent cases, Snyder did not become, by virtue of that agreement, a partner in the firm of Strang, Platt & Co. He had no interest in the profits of the firm as profits, but a right simply to demand of Ryley that he should account to him for one-third of his profits, accompanied with an obligation to pay one-third of his losses. He had no joint proprietorship with the members of the firm in the profits before division ; was not entitled to an account as partner, and had no lien on the partnership assets. Tested by the rule in *Cox* v. *Hickman*, Snyder's position is still stronger. Strang, Platt & Co. were not his agents for carrying on the business of the firm, and he had no power or right to interfere in its management.

It is claimed that whatever was the form of the arrangement, the intention was that Snyder should be interested as a partner in the firm, and we are referred to the principle that courts will look to the substance and not merely to the form of a transaction to determine its real character. But form may be substance. It is undisputed that Snyder refused to become a partner in the firm. The substituted arrangement was one which the law permitted him to make without involving him in the consequences, or subjecting him to the responsibilities, which flow from a partnership. If the ostensible agreement was not the real one, and the secret agreement was, that he

was to be a partner, clothed with a partner's rights, he could not escape from the responsibilities of that relation, by showing the ostensible contract. The law would not countenance the evasion, or permit him, under cover of the written agreement, to escape from liability as a general partner. But there is no evidence to show, or from which it can be inferred, that the ostensible agreement was not the real one. It may very well be, that the objection which would naturally exist on the part of the parties for whom Snyder was acting as purchasing agent, to his becoming a partner in a concern from which purchases might be made, would apply to the arrangement actually made, but no question arises here between Snyder and his principals. The motive which induced Snyder, by indirection, to become interested in the business of Strang, Platt & Co., so long as the arrangement made did not operate as a fraud upon the creditors of the firm, is not a material circumstance.

The only point here is, whether the actual transaction made Snyder, in law, a member of the firm, or liable for its debts. We think it did not, and that the judgment should be reversed and a new trial granted.

All concur.

Judgment reversed.