HANNAH NIRDLINGER et al., Appellants, v. ISAAC BERNHEIMER, Impleaded, etc., Respondent.

A sub-partner with one engaged with others in a joint enterprise is entitled to an accounting in reference thereto, and this although the other partners had no knowledge of the sub-partnership.

In an action the principal purpose of which was to require an accounting by defendant I., as one of the associates in a joint-stock enterprise, who held the legal title to the property purchased, in trust for all the associates, the pleadings admitted the existence of the joint enterprise, the trust ·relation of I., the share therein of J., with whom plaintiffs claimed that their intestate was a sub-partner, and that his interest was still outstanding and unliquidated. The agreement between F. and J. to share. equally in the enterprise, and that F. contributed towards it was proved. The referee found that plaintiffs were entitled to one-half the share of J., as determined upon an accounting, subject to advances made by him. An interlocutory judgment was entered accordingly. This was upon appeal by I. reversed by the General Term on the ground that the evidence disclosed a complete abandonment of the enterprise by both F. and J. *Held*, error; that as no such defense was pleaded, I. was not in a position to assert it as against J.; also, as it appeared that I. rendered accounts annually to J., down to and including the year in which the action was brought, and offered to purchase his interest, and as there was no finding of an abandonment or of an intent to abandon the enterprise on the part of J., there was no basis for the reversal.

The legal representatives of J., who died during the pendency of the action, were made parties defendant. They appeared and defended, but did not appeal. The referee found that F. did not in his life-time, nor did his representatives thereafter bear equally with J. the payments by and assessments upon the latter on account of the enterprise, nor had they refunded any part of the moneys expended by him. It was insisted that F. had by his default forfeited his interest. *Held*, untenable; that I. could not avail himself of such default, as F. owed no duty to the enterprise, but simply to J., and only the latter and his representatives could take advantage of the default, and as the partnership relation of F. and J. had been terminated by their deaths, equity required that the status

of all the parties having a right to share in the partnership investment should be ascertained.

*Burnett* v. *Snyder* (81 N. Y. 550), distinguished.

*It seems*, that should it appear on application for final judgment after an accounting, that the original purpose of the joint undertaking had not been accomplished and that it could not now be terminated and a division of the property made without too great a sacrifice, proper provision may be made for a continuance of the joint enterprise.

*It seems* also, that as the interest of J. in the joint enterprise is the subject of this action, defendants occupy the same position as if the action had been prosecuted by him, and plaintiffs are concluded by his acts, and if I. has rendered to him accounts which as between them have become accounts stated, they should be given the like effect upon the accounting herein.

(Argued March 10, 1892; decided April 12, 1892.)

Appeal from order of the General Term of the Supreme Court in the first judicial department, made October 24, 1890, which reversed an interlocutory judgment of Special Term entered upon the direction of a referee and granted a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*James W. Hawes* for appellants. The orders are appealable to this court. (Code Civ. Pro. §§ 190, 191, 1001; *Raynor* v. *Raynor*, 94 N. Y. 248; *Dorchester* v. *Dorchester*, 121 id. 156; *Hannigan* v. *Allen*, 127 id. 639; *Whitman* v. *Foley*, 125 id. 51; *Getman* v. *Ingersoll*, 117 id. 75.) The court has jurisdiction. (*Newton* v. *Bronson*, 13 N. Y. 387; *Bailey* v. *Ryder*, 10 id. 363; Story's Eq. Juris. § 1293.) Frederick Nirdlinger was entitled to one-half of the interest in the Minnesota lands that stood in the name of Jacob Nirdlinger. (*Marvin* v. *Marvin*, 53 N. Y. 607; *Fairchild* v. *Fairchild*, 64 id. 471; *Arnold* v. *Wainwright*, 6 Minn. 358; *Reynolds* v. *Sumner*, 126 Ill. 58; *Van Cott* v. *Prentice*, 104 N. Y. 45; *Massey* v. *Huntington*, 118 Ill. 80; Perry on Trusts, §§ 96, 98, 102, 321.) The parties were tenants in common, and the legal title was taken for convenience in the names of some, only of them who held

and hold in trust for the rest. (*Thompson* v. *Bowman*, 6 Wall. 316; *Wiswall* v. *McGown*, 2 Barb. 270; *Farrand* v. *Gleason*, 56 Vt. 633; *Penman* v. *Slocum*, 41 N. Y. 53; *Forster* v. *Hale*, 3 Ves. 696, 707; *Brown* v. *Brown*, 1 Strobh. Eq. 363, 370; *Brown* v. *Combs*, 29 N. J. L. 36, 39; *Gomez* v. *T. Bank*, 4 Sandf. 102, 108; *Steere* v. *Steere*, 5 Johns. Ch. 1, 11; *Downing* v. *Marshall*, 23 N. Y. 366, 375; *N. Y. D. D. Co.* v. *Stillman*, 30 id. 174, 191; *Randall* v. *Constans*, 33 Minn. 329; *Newell* v. *Cochran*, 41 id. 374; *Hodge* v. *Twitchell*, 33 id. 389; Story on Part. § 269.) Even if the relation between the parties in the land transactions be a partnership, the plaintiffs are entitled to an accounting. (*Mathewson* v. *Clarke*, 6 How. [U. S.] 122; *Chandler* v. *Chandler*, 4 Pick. 7; *Bradstreet* v. *Schuyler*, 3 Barb. Ch. 608; *Penman* v. *Slocum*, 41 N. Y. 53; *Taylor* v. *Castle*, 42 Cal. 367; *Duryea* v. *Burt*, 28 id. 569; *McConnell* v. *Denver*, 35 id. 365.) There has been no loss of right by abandonment. (*Galway* v. *M. E. R. Co.*, 128 N. Y. 132.) The rights of plaintiffs are not barred by *laches*. (2 Perry on Trusts [3d ed.], §§ 863, 864; 2 Story's Eq. Juris. [13th ed.] § 1520; *Reynolds* v. *Sumner*, 126 Ill. 58, 70–72; *Thomas* v. *Merry*, 113 Ind. 83, 92; *McArthur* v. *Gordon*, 51 Hun, 511; *Flint* v. *Bell*, 27 id. 155; *Lemoine* v. *Dunklin Co.*, 38 Fed. Rep. 567; *In re Camp*, 126 N. Y. 377; *Hamer* v. *Sidway*, 124 id. 538; *Smith* v. *Glover*, 44 Minn. 260; *Neilly* v. *Neilly*, 23 Hun, 651.)

*George H. Yeaman* for respondent. Whatever equity, if any, Frederick acquired, was only as against Jacob, and not against Isaac Bernheimer, and the other joint venturers. Isaac Bernheimer had no notice of any assignment or any claim; and, with notice, the claim would only have been against Jacob Nirdlinger for the one-half of whatever he may have realized. (Bates on Part. §§ 163–167.) The assignment made Frederick a sub-partner with Jacob, and not a partner in the business, nor a joint owner with the original venturers, but only a joint owner with Jacob, of his interest; or, more accu-

rately, gave him a right to one-half of Jacob's profits, if any. He acquired no right of action against Isaac Bernheimer, or any of the original partners, nor even as against Jacob, except on alleging and proving that Jacob had received something, for which he ought to account. which is neither alleged nor proved, and is expressly negatived. (*Burnett* v. *Snyder*, 76 N. Y. 344; 81 id. 550.) The claim of Frederick and his heirs was barred and lost by *laches* and abandonment, and the referee erred in refusing to so find. (*Calhoun* v. *Millard*, 121 N. Y. 81; *Phillips* v. *Phillips*, 61 Ala. 41; *Lowry* v. *Cobb*, 9 La. Ann. 592.) If dissolution would give Frederick an action against the original members of the firm, then this is one of the cases where death of one or more members does not dissolve a partnership. (*Hunt* v. *Rousmanier*, 8 Wheat. 174.)

*Charles P. Daly* for respondents. There was an abandonment of the enterprise by Jacob Nirdlinger from the time that he ceased to make any further payments in 1863 to the commencement of the suit. If a partner abandons the enterprise and leaves his associate to bear the burden alone, the original degree of obligations towards him does not exist. The inequitable conduct of the partner may be such as to deprive him of any right to complain that the other had retained to himself the benefit of the joint adventure. (Bates on Part. 312; Collyer on Part. § 220; *Reilly* v. *Walsh*, 11 Ir. Eq. 22; *McLure* v. *Ripley*, 2 M. & G. 274; *Prendegast* v. *Turton*, 1 Y. & C. 98; *Hollingsworth* v. *Fry*, 4 Dallas, 345; *Wagner* v. *Baird*, 7 How. [U. S.] 242, 243; *Bowman* v. *Waltham*, 1 id. 188; *Godden* v. *Kimmel*, 99 U. S. 210, 211; *Badger* v. *Badger*, 2 Wall. 87; *Senouser* v. *Christian*, 19 Ves. 158; *Norway* v. *Rowe*, 19 id. 159; *Knight* v. *Taylor*, 1 How. [U. S.] 168; *Marsh* v. *Witmore*, 21 Wall. 184, 185; *Brown* v. *County of Buena Vista*, 95 U. S. 161; *Harrison* v. *Burlingame*, 48 Hun, 212; *Doubleday* v. *Kress*, 50 N. Y. 413; *Smith* v. *King*, 68 id. 137, 138, 139, 140, 141; *Von Weim* v. *Scottish Union, etc.*, 33 Alb. L. J. 488; Story on Agency,

§§ 98, 99; *Smith* v. *Goldsworthy*, L. R. [4 Q. B.] 430; *Livingston* v. *Lynch*, 4 Johns. Ch. 595.) Plaintiffs are not entitled to an accounting. (*Bray* v. *Froment*, 6 Mad. 5; *Matthewson* v. *Clark*, 6 How. [U. S.] 141; *Reilly* v. *Reilly*, 14 Mo. App. 62; *Brown* v. *De Tastel*, Jacob, 284; *Sellembre* v. *Putnam*, 30 Cal. 490; *Burnett* v. *Snyder*, 76 N. Y. 344; *Sherer* v. *Paine*, 11 Allen, 269; 1 Bates on Part. § 167; *Pendergast* v. *Turton*, 6 H. L. Cas. 659.) The partnership was not dissolved by the death of Mayor Arnold and Simon W. Arnold. (2 Bates on Part. § 580; Story on Part. 6; 1 Bouvier's Dict. 392; *Jones* v. *Clark*, 42 Cal. 180; *M. N. Bank* v. *Dean*, 124 Mass. 86; *Walker* v. *Wait*, 50 Vt. 668; *McNeish* v. *Hullis*, 57 id. 316; *Tenney* v. *N. E., etc., Co.*, 37 id. 64; *Greenwood's Case*, 3 De G., M. & G. 477; *Baird's Case*, L. R. [5 Ch. App.] 703, 733, 735; *Duffield* v. *Brainard*, 45 Conn. 424; *Butler* v. *T. Co.*, 46 id. 145; 2 Bates on Part. § 581.)

MAYNARD, J. The plaintiffs, as the representatives and successors of Frederick Nirdlinger, have brought this action to establish the right of their intestate as a sub-partner of his brother Jacob in a joint venture, which the latter entered into with six associates in the year 1854, for the purchase and sale at a profit of lands in the state of Minnesota. One of the principal objects of the action is to obtain an accounting from the defendant Isaac Bernheimer, who was one of the associates of Jacob Nirdlinger in this enterprise, and who held the legal title to the lands purchased in trust for the members of the copartnership, and who, by the agreement of the parties, had the principal care and management of the entire property. Jacob Nirdlinger contributed his share of the moneys required for these investments, and which, for a time at least, were funds in which Frederick had a half interest. In view of this fact the brothers entered into an agreement January 17, 1859, in which it was stipulated that Frederick should be jointly entitled with his brother to an equal portion of his share of the property acquired and to be acquired by Jacob and his associates, and that he should bear one-half of the burdens to

be borne by his brother under the agreement which he had entered into for the prosecution of the joint undertaking. Frederick's interest in his brother's share was not known to the copartners of the latter.

Jacob Nirdlinger and all of his associates in the Minnesota enterprise, or their successors or representatives, are made parties defendant. One of the members of the firm, who had the largest interest in it, died in 1868. Frederick Nirdlinger died in 1873, and this action was brought November 22, 1882. Jacob Nirdlinger died August 16, 1887, and his representatives were substituted as defendants. None of the defendants answered except Isaac Bernheimer and Jacob Nirdlinger and his representatives. The pleadings admit the existence of the joint enterprise, the trust relation of Bernheimer to it, the share of Jacob Nirdlinger therein, and that his interest is still outstanding and unliquidated.

The only issue involved relates to Frederick Nirdlinger's title. It is alleged that whatever interest he had in the common enterprise has been lost by an abandonment of it by himself and by the plaintiffs who have succeeded to his rights in the property. The cause was referred and the referee found that the plaintiffs were entitled to one-half of the share which Jacob Nirdlinger had in the lands purchased by him and his associates in Minnesota, and in the proceeds of the sales which had been made, subject to the payment of any advances made by him, and subject to the results of an accounting, as to the management of the joint venture, by Bernheimer, and that an interlocutory judgment should be entered directing an accounting, and that all questions as to the further rights of the parties should be reserved until such account had been taken and stated.

The defendant Bernheimer appealed from the interlocutory judgment and also made a motion for a new trial, under section 1001 of the Code, but the representatives of Jacob Nirdlinger did not appeal. The Supreme Court reversed the judgment upon the ground that the evidence in the case showed a complete abandonment of the enterprise by the Nirdlingers, and

after such a lapse of time equity would not permit the plaintiffs to claim an accounting simply because the enterprise has at last turned out to be profitable.

But upon the pleadings and proofs, the defendant Bernheimer is not in a position where he can be heard to insist that there was an abandonment of the undertaking by Jacob Nirdlinger. No defense of that character was pleaded by him, or established upon the trial. He admits, by the allegations in his answer, that Jacob Nirdlinger is still entitled to share in the profits of the venture, and has an interest in the property held by him in trust for his copartners. He has rendered accounts annually to Jacob down to and including the year when this action was brought. He offered to purchase his interest in the property in 1882, and pay $7,000 for it.

It is not alleged, and there is no finding, that Jacob was indebted to the firm for any advances made, or that any demand was ever made upon him for contribution to the expenses of the enterprise which was refused. The referee has found that the latter invested at least $16,900 in the purchase of these lands. For aught that appears, there may be a balance in the hands of Bernheimer to the credit of Jacob Nirdlinger, and there may have been such a balance to his credit from the outset of the undertaking. It is admitted that Bernheimer has received the proceeds of lands sold, and the rents and profits of some of the lands, and the proceeds of timber and staves manufactured from the property, and income from other sources; and he affirms that he has kept an account of all his transactions, as trustee, in which he has entered a description of the lands bought; the lands sold; the several amounts received by him therefrom, and of all the revenues derived from the investment and a statement of the taxes and other necessary disbursements made by him; that he has credited each member of the firm with the amount contributed to the joint capital, and the various sums to which he might be entitled as his portion of the proceeds of the enterprise, and has charged him with his proportionate part of the expenses; and that he is ready to render

an account to any of his associates whenever required by the court. His account-book was put in evidence, but is not contained in the printed case, and the state of the account between the parties, as shown thereon, does not appear.

Under these circumstances, there can be no basis for the contention that Jacob Nirdlinger had forfeited his interest in this enterprise by an abandonment of it. He is not shown to have been delinquent in any duty which he owed his copartners, and there is no finding of an abandonment, or of an intent to desert his associates. Much stress is laid upon the fact that in his schedules in bankruptcy, in 1878, he omitted all reference to his interest in this property, which he explains by saying that he did not consider it worth anything at that time, and that he was then under the impression that if he called on Bernheimer, he would be in his debt. This impression was evidently unfounded, for Bernheimer does not, in his testimony, make any claim of an indebtedness from Jacob Nirdlinger to himself, unless it is shown by his account-book, which is not in the record ; nor was there any request made to the referee to find that Jacob was in arrears to the firm.

Undoubtedly, the investments did not prove immediately remunerative ; and for a long time the lands could not be sold at a profit. Heavy losses were also incurred by the destruction of valuable improvements by fire. But the cost of the land and of the improvements, simply represent the capital which had been actually contributed by the partners, and of which each had furnished his proportionate share.

It is not apparent that there were any further moneys to be paid, except for taxes and the necessary expenses of caring for the property, and which are not shown to have exceeded its annual income. It must also be borne in mind that Bernheimer had the legal title to the entire property and the power of absolute disposal and could thus reimburse himself at any time for any advances made by a sale of such portions of the property as might be necessary for that purpose. It also appears by his answer that he has in his hands mortgages taken by him upon a sale of portions of the property.

But the referee has found that Frederick Nirdlinger did not, in his life-time, nor have his representatives since his death equally borne with Jacob Nirdlinger the payments and assessments of the latter on account of this enterprise; or refunded to Jacob any part of the moneys expended by him on account thereof; and it is insisted that Frederick at least had forfeited his interest in the Minnesota investments by this default on his part.

We are unable to see how the defendant Bernheimer can avail himself, upon this appeal, of any such question. Jacob Nirdlinger's representatives have acquiesced in the judgment, and as Frederick was only a sub-partner of Jacob's, not known to the other members of the firm, and having no other or greater rights in the firm property than those which he acquired by assignment from his brother, it is not seen how any of the partners, other than Jacob, or his representatives, can take advantage of any failure on Frederick's part to comply with the conditions upon which he acquired an interest in his brother's share of the copartnership estate. He owed no duty to the common enterprise. His obligation was to his brother. If the latter is not in default in defraying his share of the burden of the joint-venture, the failure of the former to reimburse him is available to him alone as a defense. The defendant Bernheimer is not prejudiced; he can only be required to account for Jacob's share of the property, and it is immaterial to him whether the whole share is paid to Jacob or divided between him and Frederick's representatives.

The right of a sub-partner to maintain an equitable action of this character upon the facts disclosed in this case cannot be successfully questioned. As between themselves the brothers were partners, and the subject of the partnership is the interest which one of them had in the Minnesota enterprise, and the extent of which must be determined in order to adjust the equities between them. By the death of the brother's intestate their respective rights have, by operation of law, become vested in their heirs and legal representatives, and if for no other reason the settlement and distribution of their

estates would render an accounting necessary. The property in which both estates have a joint interest is in the hands of Bernheimer as trustee, and his presence as a party defendant is authorized both under sections 447 and 452 of the Code; the former of which provides that a person may be made a defendant who is a necessary party for a complete determination or settlement of a question involved therein; and the latter imposes upon the court the duty of directing persons to be brought in whose presence is required for a final disposition of the controversy. (*Long* v. *Magestre*, 1 John. Ch. 305; *Dyckman* v. *Valiente*, 42 N. Y. 549; *Stokes* v. *Stokes*, 59 Hun, 431; *S. C.*, 120 N. Y. 615.)

The case of *Burnett* v. *Snyder* (81 N. Y. 550) is relied upon by the respondent; but is not applicable. The sub-partner there made no contribution to the capital of the principal firm, and had no proprietory interest in its funds, or in the profits arising in its business before their division, and the question involved related solely to his liability to the creditors of the firm. Here the plaintiffs have a vested interest in the corpus of the enterprise, and the relation of sub-partners has been terminated by the death of the parties to it, and the time has arrived when equity requires that the status of all the parties having a right to share in the partnership investments shall be ascertained.

It does not follow that the joint venture shall be immediately broken up. That question is reserved until after the accounting has been had and application is made for final judgment. The court will then have full power to deal with it as will best subserve the interests of the respective owners of the property.

If it should then appear that the original purpose of the joint undertaking had not been accomplished, and that it could not be now terminated, or a division of the property made without too great a sacrifice, the court can make such proper decree with reference to a continuance of the trust as may be necessary to prevent any serious loss to the trust estate.

The admission of plaintiffs' right to maintain this action as the successors and representatives of a sub-partner of one of the members of the defendant's firm, is not antagonistic to the

principle of personal selection, or *delectus personarum*, as it is sometimes called, which is usually the controlling motive in the formation and pursuit of partnership adventures. The defendants are not compelled to admit the plaintiffs as members of their firm. It is still Jacob Nirdlinger's interest in the enterprise which is to be the subject of adjudication, and the plaintiffs are concluded by his dealings with the firm, and by his acts and attitude with reference to its affairs. Payments made to him are chargeable to them; his defaults, if any, are imputable to them, and if the defendant Bernheimer has annually rendered accounts to him, which, as between them, have become accounts stated, they will be given a like effect upon the accounting which has been ordered in this action, and cannot be avoided, except upon some ground which would ordinarily be sufficient to open such an account, as for fraud, collusion, mistake or the like.

In short, the defendants are to be placed in no other or worse position than if this action had been brought and prosecuted by Jacob Nirdlinger, for the purpose of an accounting and a discovery of his interest in the common property.

The orders appealed from should be reversed, and the interlocutory judgment entered herein affirmed, with costs.

All concur.

Orders reversed and judgment affirmed.