**MITCHEL v. BOWERS, Collector of Internal Revenue.**

(Circuit Court of Appeals, Second Circuit. November 1, 1926.)

No. 22.

1. **Partnership** ⟜12—Contract entitling wife to one-half of husband's profits from partnership, and making her liable for one-half of losses, did not make wife partner.

In New York, contract between husband and wife, entitling wife to one-half of husband's profits from partnership, and making wife liable for one-half of losses, assented to by other partners, did not make wife a partner, since it did not give her any present interest, equitable or legal, in firm assets.

2. **Partnership** ⟜313.

Only when subpartner acquires some interest in firm assets as such may he sue partners for accounting.

3. Internal revenue ⟨☞7(3)—Contract of partner transferring to his wife one-half of his share of profits and losses of partnership held not to affect his liability to income tax on his entire share (Revenue Act 1917, § 1204, subd. 1, amending Revenue Act 1916, § 8, subd. [e], being Comp. St. § 6336h; Revenue Act 1918, § 218, subd. [a], being Comp. St. § 6336⅛i).

Subpartnership contract, entitling wife to one-half of husband's profits from partnership, and making her liable for one-half of losses, did not affect taxability of husband's income from original partnership, under Revenue Act 1917, § 1204, subd. 1, amending Revenue Act 1916, § 8, subd. (e), being Comp. St. § 6336h, and Revenue Act 1918, § 218, subd. (a), being Comp. St. § 6336⅛i.

Manton, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action by Ormsby McKnight Mitchel against Frank K. Bowers, as Collector of Internal Revenue. Judgment for defendant, dismissing complaint on the merits (9 F.[2d] 414), and plaintiff brings error. Affirmed.

The action was to recover from the collector part of the plaintiff's income tax paid under duress for the years 1917, 1918, and 1919. During this period he was assessed upon 51 per cent. of the entire profits of the firm of Power, Son & Co., of which he and one Kneeland were the only partners. By the articles of copartnership the plaintiff received 51 per cent. of the profits, and Kneeland 49, a division which remained unchanged during the period in question. On January 1, 1916, the plaintiff entered into an agreement with his wife, which is the basis for his claim that he should have been assessed for only one-half of his share. This agreement stipulated that the wife should be "entitled to one-half of the profits which shall come to" the plaintiff "from said firm," and should be "liable to pay" him "one-half of the losses which he may sustain by reason of his partnership." Further it provided that "upon receiving the profits" the plaintiff "agrees to hold for and pay to" his wife "the share thereof to which she shall be entitled hereunder, and upon the sustaining of the losses herein provided for" his wife agreed to pay the plaintiff "the share thereof for which she shall be liable hereunder." Settlements were to be made annually, and the contract might be terminated at the option of either party "at any time."

The complaint alleged that the parties at once filed the contract with the firm, whom they directed "to credit and pay over" to her "as they accrued the profits to which under the terms thereof" she "became entitled."

The firm promised "so to do, and since said time said firm did duly credit to the account" of the wife "as they accrued" one-half of the plaintiff's profits "making the same forthwith, upon their accrual, subject to her absolute disposition."

The sole question raised by the writ is whether, assuming the contract not to be a sham, the plaintiff remained taxable for his full share of the profits. The defendant moved to dismiss the complaint on its face, and the District Court so ordered.

Parker & Aaron, of New York City (Herman Aaron, of New York City, of counsel), for plaintiff in error.

Emory R. Buckner, U. S. Atty., of New York City (Nathan R. Margold, Asst. U. S. Atty., of New York City, of counsel), for defendant in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1, 2] We start with the assumption, agreed upon by both sides and well settled by the law of New York, where the agreement was made and the business of the firm was carried on, that the contract of January 1, 1916, did not make the plaintiff's wife a partner in the firm. Burnett v. Snyder, 76 N. Y. 344, Burnett v. Snyder, 81 N. Y. 550, 37 Am. Rep. 527. The result is no different when the other partners in the firm know and assent to the arrangement. Rockafellow v. Miller, 107 N. Y. 507, 14 N. E. 433. It is only when the subpartner acquires some interest in the firm assets as such that he may sue the partners for an accounting. Nirdlinger v. Bernheimer, 133 N. Y. 45, 30 N. E. 561.

[3] The question, therefore, is whether, his wife not being a partner, the plaintiff falls within section 1204 (e) of Act of 1917, amending the Revenue Act of 1916 (Comp. St. § 6336h) and section 218 (a) of the Act of 1918 (40 Stat. 1070 [Comp. St. § 6336⅛i]), to the extent of the half covered by the agreement. The first section provides that "persons carrying on business in partnership shall be liable * * * only in their individual capacity, and the share of the profits of the partnership to which any taxable partner would be entitled if the same were divided, whether divided or otherwise, shall be returned for taxation." The second is not in substance different, the important clause being: "There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership."

As a subpartner the wife through the agreement got no present interest, equitable or legal, in the firm assets; the assent of the other partners would have been as necessary for this as to constitute her a partner, for ownership follows the status. Until by distribution the profits became the separate property of the plaintiff, her rights were upon the contract, not in re. This does not run counter to Nirdlinger v. Bernheimer, 133 N. Y. 45, 30 N. E. 561, which distinguished Burnett v. Snyder, 81 N. Y. 550, 37 Am. Rep. 527, for that reason. Therefore the plaintiff was in any event obliged to include all undistributed profits in his return; the statute so directed, and the profits pro tanto were still his.

At most, then, his exemption was confined to such profits as were distributed, to such as "came to" him as his separate property. As to these it may be plausibly argued that, since she could get nothing till the profits should "come to" him, and since he was to "hold for and pay to" her all that he got, the profits must be his before they became hers. On the other hand, since they became hers, at least in equity (Barnes v. Alexander, 232 U. S. 117, 34 S. Ct. 276, 58 L. Ed. 530), as soon as he got them, it must be admitted that there was no instant of time after their distribution at which she was not entitled to them. Whatever might be the dialectical escape from the dilemma so raised, it seems to us that in any view the provision which allowed him at his pleasure to denounce the agreement put the absolute disposition of the profits always within his power. Whether the contract lacked consideration, and was void, we need not decide. It seems to us enough that the plaintiff retained the power to resume his title to the profits when he chose.

As to profits not yet distributed, in which the wife had acquired no proprietary interest, we do not see that there can be a dispute. As to those distributed there may be some doubt, depending upon whether the contract had consideration, without which equity will not create an equitable assignment. But, even if the wife's interest in these was unconditional, the plaintiff's inaction until their distribution was the exercise of an option to allow them to pass to her. The situation remained no different from the voluntary cession periodically to her of one-half of whatever was distributed. Throughout the period the right of disposition remained his, as it does in community property, and this was the ground of the decision in U S. v. Robbins, 269 U. S. 315, 46 S. Ct. 148, 70 L. Ed. 285. In substance the cases appear to us indistinguishable.

Moreover, taken more at large, the sec-

tions were in our judgment meant to read comprehensively. Their purpose was to reach all the firm income by taxing the partners individually. It would be a denial of that purpose to suppose that all the firm profits might not be taxable against the partners, but might have to be reached under other sections of the statute. Certainly it cannot be argued that the wife could be taxed under these sections. Therefore, if the plaintiff be right, they allowed some part of the firm income to escape, and left it to be caught elsewhere. This we think they pretty clearly forbid. Any mediate arrangement by which a partner shared what he might get after he got it did not, therefore, put him outside the scope of such provisions, even if he reserved no power to terminate the contract.

Finally, we attach no significance to the action of the firm upon the contract. Nobody supposes that these made the wife a partner; they accomplished no more than to recognize formally and on the books obligations which the law would have imposed upon the firm in any case. Mere notice would have charged them at their peril with a respect for her rights.

Judgment affirmed.

MANTON, Circuit Judge (dissenting). The tax here considered was imposed under the Revenue Act of 1916, as amended by subdivision 1, § 1204, of the Revenue Act of 1917 and section 218 of the Act of 1918, which read as follows:

"(e) Persons carrying on business in partnership shall be liable for income tax only in their individual capacity, and the share of the profits of the partnership to which any taxable partner would be entitled if the same were divided, whether divided or otherwise, shall be returned for taxation and the tax paid under the provisions of this title. * * * *"

"(d) That individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year. * * * *"

The complaint, which was dismissed on motion below, alleges that the firm of Power, Son & Co. was a partnership, the interest of which was owned, 51 per cent. by the plaintiff in error, and 49 per cent. by one Kneeland, and that said copartnership continued throughout the year 1917 and several years thereafter. It pleads that on January 1, 1916, the plaintiff in error and his wife en-

tered into an agreement which provided, among other things, that for a consideration she was entitled to one-half of the profits which would come to the plaintiff in error from said firm, and was likewise liable to pay to the plaintiff in error one-half of the losses that might be sustained by reason of his partnership in said firm. Profits were defined in the agreement to include all interest and allowances to the plaintiff in error for capital invested and accumulations to his credit therein, including such capital and accumulations as might be represented by property which, as between the plaintiff in error and his wife, is the property of the wife; that, upon receiving the profits therein mentioned, the plaintiff in error agreed to hold them for and pay them to his wife, as she was entitled to them pursuant to this agreement. Upon sustaining losses, it was provided that the wife would pay to the husband her share according to her percentage interest. Settlements were to be made accordingly at the expiration of the year. The agreement might be terminated at any time by either party.

Paragraph V of the bill of complaint alleged:

"V. That upon the making of said agreement an original thereof was promptly filed by the parties thereto with said firm of Power, Son & Co., and thereupon the parties to said agreement did direct said firm to credit and pay over to said Elizabeth P. Mitchel, as they accrued, the profits to which, under the terms thereof, said Elizabeth P Mitchel became entitled, viz. twenty-five and one-half per cent. (25½%) of the profits of said firm, and said firm did undertake and promise and agree so to do, and since said time said firm did duly credit to the account of said Elizabeth P. Mitchel, as they accrued, the said twenty-five and one-half per cent. (25½%) of said profits, making the same forthwith, upon their accrual, subject to her absolute disposition, and the said Elizabeth P Mitchel has since said time duly exercised such power and disposition and did duly account for said twenty-five and one-half per cent. (25½%) of said profits in her income tax returns made and filed and rendered as required under the laws of the United States of America."

The complaint further alleges that there were profits and losses, and divisions were made according to the terms of the agreement between the plaintiff in error with his wife. Husband and wife each made return in their income tax report for such profits and paid taxes upon them. Thereafter the government insisted that under the section of the income tax law referred to the plaintiff in error was obliged to pay up to the extent of 51 per cent. of the profits of the firm as he received them.

The contract between the plaintiff in error and his wife was for a sufficient consideration and was a legal and binding agreement. Earl v. Peck, 64 N. Y. 599; Nirdlinger et al. v. Bernheimer, 133 N. Y. 45, 30 N. E. 561. The parties were competent to make such contracts under the Domestic Relations Law of the state of New York. Laws 1909, c. 19 (Consol. Laws, c. 14) § 51. We should consider the contract as such for the purposes of this appeal. The taxpayer is free to enter into such an agreement, even though the result may be that his income tax burden is lessened. Such agreement is not an evasion of income tax payments, so as to invalidate its obligatory effectiveness. Bullen v. Wisconsin, 240 U. S. 630, 36 S. Ct. 473, 60 L. Ed. 830; Bowers v. N. Y. Trust Co. (C. C. A.) 9 F.(2d) 548.

Unquestionably, the effect of the agreement was to set aside for Mrs. Mitchel a one-half interest in the plaintiff in error's interest in the partnership, and she obtained a lien thereon, which amounts, by operation of law, to an equitable assignment. The phrase of the agreement is that "the party of the second part shall be entitled to one-half of the proceeds which shall come to the party of the first part from said firm," and "upon receiving the profits herein mentioned the party of the first part [plaintiff in error] agrees to hold for and pay to the party of the second part [wife] the share thereof to which she shall be entitled hereunder." Paragraph V as pleaded, and which is admitted for the purpose of this motion, is sufficient in its statement of knowledge and acquiescence on the part of Power, Son & Co. as to the agreement. That the circumstances amount to an equitable assignment of the profits is clear from the New York state decisions (Holmes et al. v. Evans, 129 N. Y. 140, 29 N. E. 233), as well as the federal decisions (U. S. v. Butterworth-Judson Corp., 267 U. S. 387, 45 S. Ct. 338, 69 L. Ed. 672; Barnes v. Alexander, 232 U. S. 117, 34 S. Ct. 276, 58 L. Ed. 530; Walker v. Brown, 165 U. S. 654, 17 S. Ct. 453, 41 L. Ed. 865; Ketchum v. St. Louis, 101 U. S. 306, 25 L. Ed. 999).

Mrs. Mitchel could have insisted upon payment of the 25½ per cent. of the profits whenever they were determined to be such profits by the partnership. She was likewise obligated to meet the losses to the same extent. The benefit of the income and the obligation to pay the losses arises out of the same agreement. Each is a consideration for

the other. They fall or stand together. Plaintiff in error could not deduct from his income 51 per cent. of the losses of the firm, any more than he was obliged to add to his income 51 per cent. of the profits. The parties treated the contract as having this binding effect. During the course of the years, the payments were made in the letter and spirit of the contract. If the plaintiff in error by any means obtained and retained possession of these funds, Mrs. Mitchel could have compelled him to pay her the amount. Indeed, the firm of Power, Son & Co., with knowledge of the contract, was obligated to see that 25½ per cent. reached Mrs. Mitchel, or otherwise they were responsible.

The plaintiff in error, as a taxpayer, never received the 25½ per cent. as his income. It was never net income to him. Indeed, he did not have the right to retain his wife's share. Is it possible that for merely receiving the fund, in turn to be transmitted to his wife, the government exacts against him an income tax for moneys which were never his individual income? In every sense in which the term "income" is used, it has been considered something which the taxpayer is entitled to, not which passes on to some one else, who actually receives it. To agree with the construction below is to hold that the plaintiff in error shall be deemed to have received the money, and Mrs. Mitchel deemed not to have received it. Such a tax rule would be bad in economics and is unsound in principle. Congress never intended that any one should pay an income tax except the real recipient of benefits by income, and he must pay his share of the government's burdens.

Subdivision 1, § 1204, of the Revenue Act of 1917, and section 218 (a) of the Revenue Act of 1918, do not by any construction intend that partnerships as such should be taxed as entities. On the contrary, they provide that individuals engaged in partnership shall be taxpayers, and as such individuals they account for their partnership income, to which they become entitled, whether or not distributed. They are not permitted to have their share of the profits remain undistributed and accumulated among the firm assets and thus escape taxation. This in substance was the provision of the Income Tax Act of 1913, § 2 (38 Stat. 114). The argument "that the profits had to come to the wife before his wife became entitled to one-half of the same" is not sound. The instant they came or accrued to the plaintiff in error, his wife became entitled to one-half thereof. She had a previous assignment which gave her such rights to the profits. Her agreement provided for future

profits at all times during its life. The moment the plaintiff in error's rights to profits accrued, the 51 per cent. was burdened with the legal right of the wife to one-half of the same under her agreement. The 51 per cent. was never free from such burden, and the wife was at liberty at all times to proceed against it for her share.

And the claim "that the partnership profits became specifically taxable before the interest of the wife arose" is equally unsound. To so hold would be to say that the tax is an excise tax rather than an income tax. It was never the intention of Congress to impose an excise tax in the manner referred to in the section. To do so is to make it depend upon the rise and fall of the business. The revenue law of the years in question provides a long list of excise taxes upon business firms or companies carrying on certain lines of business, such as brokers, pawnbrokers, shipbrokers, custom house brokers, theaters, etc. If a tax upon the partnership was intended to be an excise tax, it would be found in title IV under the head of "Miscellaneous Taxes."

The structure of the act in question provides in "Title 1. Income Tax. Part 1. On individuals," and the sections with which we have to do, by the methodical arrangement and structure of the statute, show that the text relied upon is an integral part of the income tax law on individuals, and is not an excise tax. If it is an excise tax, the burdens of taxation would be almost confiscatory to an individual partner as to his share of the firm's profits. He would have to pay an income tax, and, in addition, would be liable to pay on such share of the profits an excise tax. Congress never had such confiscatory intent. It never intended to levy an excise tax for carrying on a business in partnership at any such rate of percentages as is called for by the income tax. To regard it as an income tax payable by the individual is to impose the tax upon the person receiving it, and it is to give expression to the intention of Congress, which seems clear and unambiguous. Such construction should be selected. Eidman v. Martinez, 184 U. S. 578, 22 S. Ct. 515, 46 L. Ed. 697. There is no provision which requires, as a condition of an arrangement to reduce his income tax, that the taxpayer surrender part of his principal. Nor did Congress ever intend to tax the partnership, and later tax the individuals who received part of the profits, as Mrs. Mitchel did.

In the case of U. S. v. Robbins, 269 U. S. 315, 46 S. Ct. 148, 70 L. Ed. 285, the Supreme Court ruled that the wife, having an interest

in community property, had merely an expectancy in such property while her husband lived, as decided by the state court, and therefore the whole income tax under the Revenue Act of 1918 is assessable against the husband, where he alone had the disposition of the community fund and may spend it substantially as he chooses. Such property, it was held, could not be taken for the wife's debts. In the case under consideration, the facts are quite the reverse in obligation to pay debts and ownership of property.

The judgment should be reversed.