SAM H. HARRIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8614, 9623.   Promulgated April 30, 1928.

*Arthur F. Driscoll, Esq., J. S. Y. Ivins, Esq., Leland T. Atherton, Esq.,* and *Dennis F. O'Brien, Esq.,* for the petitioner.

*George G. Witter, Esq.,* and *E. C. Algire, Esq.,* for the respondent.

874

[REDACTED]

OPINION.

ARUNDELL: The item of $10,000 paid by the partnership of Cohan and Harris as its share of the so-called strike fund raised by the Producing Manager's Association is the same item considered in the case of *George M. Cohan* v. *Commissioner*, 11 B. T. A. 743, and held therein to be allowable as a business expense. Petitioner's distributive share of partnership income for the year 1920 should be adjusted accordingly.

The record, in so far as it relates to the purported assignment of an interest in theatrical enterprises, is in an unsatisfactory state. It is not at all clear what the petitioner was attempting to assign, or who owned it. We do not know whether he and his partner owned the plays outright or merely the right to produce them. Throughout the proceedings these enterprises were spoken of as partnership property, yet in the assignment the petitioner refers to his "100% interest" in one of them, "Wake Up, Jonathan."

We will assume, however, for the purpose of deciding the question presented, that these "enterprises" were property of some sort and that they were partnership property. Working on these assumptions, did the assignment operate to give the assignee such a right in the partnership property that a proportionate part of the partnership income was no longer income to the petitioner?

It has been declared by the Supreme Court and the courts of the State of New York that partnership property belongs to the firm and not to the partners. The partners are entitled only to a share of what may remain after payment of the partnership debts and after settlement of the accounts between the partners; and no greater interest than this can be acquired by a party coming into the right of a partner, no matter how the right be acquired, whether by assignment, by purchase, as a personal representative, under an execution, or commission of bankruptcy. The utmost that can be acquired by

anyone acquiring the interest of a partner is an interest in the surplus, if any, which remains after payments of all partnership debts. An assignment or a sale (whether the sale be voluntary or under execution) of the interest of an individual partner will not operate to transfer to the assignee or purchaser any part of the firm property. *United States* v. *Hack*, 8 Pet. 271; *Clagett* v. *Kilbourne*, 1 Black, 346; *Bank* v. *Carrollton Railroad*, 11 Wall. 624, 628; *Menagh* v. *Whitwell*, 52 N. Y. 146; 11 Am. Rep. 683; *Costello* v. *Costello*, 209 N. Y. 252; 103 N. E. 148. See also *In re Bertenshaw*, 85 C. C. A. 61; 157 Fed. 363; 2 Rowley, Law of Partnership, § 830.

While an assignee may sue for an accounting after the dissolution of the partnership and join the former members as parties defendant (*Nirdlinger* v. *Bernheimer*, 133 N. Y. 45; 30 N. E. 561) such an action can not be maintained during the existence of the partnership. As long as the partnership continues, the remedy of an assignee of one of the members is against such member. *Mathewson* v. *Clark*, 6 How. 121, 141.

Having, as we have seen, no interest in the partnership property, the assignee's position in this case is no different from that of the assignee in the case of *Mitchel* v. *Bowers*, 15 Fed. (2d) 287. The opinion in that case reads in part:

As a subpartner the wife through the agreement got no present interest, equitable or legal, in the firm assets; the assent of the other partners would have been necessary for this as to constitute her a partner, for ownership follows the status. Until by distribution the profits became the separate property of the plaintiff, her rights were upon the contract, not in *re*. This does not run counter to *Nirdlinger* v. *Bernheimer*, 133 N. Y. 45, 30 N. E. 561, which distinguished *Burnett* v. *Snyder*, 81 N. Y. 550, 37 Am. Rep. 527, for that reason. Therefore the plaintiff was in any event obliged to include all undistributed profits in his return; the statute so directed, and the profits pro tanto were still his.

In the case of *Burnett* v. *Snyder*, cited above, the members of a partnership, Strong, Platt, and Ryley, had proposed to Snyder that he become a partner with them. Snyder declined to do so. It was then proposed that he should take a share of Ryley's interest and the arrangement was concluded on that basis. In a suit to recover a debt of the firm the question arose whether Snyder was a partner. It was held that:

He [Snyder] had no interest in the profits as profits, but a right simply to demand of Ryley that he should account to him for one-third of his profits, accompanied with an obligation to pay one-third of his losses. He had no joint proprietorship with the members of the firm in the profits before division, was not entitled to an account as a partner, and had no lien on the partnership assets * * *. Strong, Platt & Co. [the partnership] were not his agents for carrying on the business of the firm, and he had no power or right to interfere in its management.

In *Stokes* v. *Stokes*, 13 N. Y. S. 407, a partner had assigned to his son "an undivided fifth part of his interest" in the firm. Respecting the assignment, the court held:

It is clear that by such assignment he obtained no rights as a partner and was not responsible for the debts of the firm * * *. (Citing *Burnett* v. *Snyder, supra.*)

We do not understand the claim to be that petitioner's wife, by virtue of the assignment, became a partner in the firm of Cohan & Harris. At any rate, it is quite obvious that she did not become a partner for neither she nor the partners intended such a result (*Kent* v. *Universal Film Mfg. Co.*, 193 N. Y. S. 838, 844), and neither the partners nor anyone else so regarded her. Whatever part of the partnership profits ultimately come to her, come not from the partnership but from the petitioner. *Burnett* v. *Snyder, supra; Rockafellow* v. *Miller*, 107 N. Y. 507; 14 N. E. 433. Mrs. Harris did not sign the instrument and it is open to question whether she could be held responsible for losses that might be sustained in the operation of the several enterprises. After the execution by petitioner of the assignment there were still only two members of the partnership and they alone were entitled to any profits it made. The respondent did not err in including in petitioner's income for 1920 the portion of partnership profits which petitioner, on his books, credited to the wife's account.

The third issue involves items of income for the period January 1 to June 30, 1921, from the same source (with the exception of the dividends from the Harris Theatre Co.) as the items concerning which there was a dispute in the *Cohan* case, *supra.* What we said there is applicable to this case and we can not find that the respondent erred in placing the items of income listed, together with other income, on annual basis and computing the tax accordingly. In the present case the additional argument is made that, as the return for the 6-month period was filed October 11, 1921, the Revenue Act of 1921, which was not enacted until November 23, 1921, can not apply, and the Revenue Act of 1918 did not require a taxpayer making returns for a period less than a year to place income for such period on an annual basis. The answer to this is that Title II of the 1921 Act, within which section 226 falls, is by section 263 made retroactive to January 1, 1921, and Title II of the 1918 Act is repealed as of the same date by section 1400 (a) of the Revenue Act of 1921.

At the hearing one of the counsel for petitioner in examining a witness read the amount of $33,979.53 as purporting to be the amount reported as petitioner's share of the profits of the partnership of Cohan and Harris for the period January 1 to June 30, 1921. We are asked now to find as a fact that petitioner's income was overstated

by $100 as the partnership books show petitioner's share of profits to be $33,879.53. Petitioner's original return for this period was placed in evidence and the amount of income from the partnership stated thereon is $33,879.53. The reading of the larger amount was quite evidently an unintentional error. We accordingly deny the request for a finding that income was overstated by $100.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*

PHILLIPS dissents.