(47 Misc. Rep. 301.)

KIRKWOOD v. SMITH et al.

(Supreme Court, Special Term, New York County. May, 1905.)

1. PARTNERSHIP—EXISTENCE OF RELATION.

Where plaintiff advanced money to another, to be used solely in the
establishment and carrying on of a specified business under the latter's
name, the venture to continue five years, and plaintiff to be paid one-
fourth of the net profits, and provision being made that, upon the death
of the other, or the expiration of the stipulated period, the amount ad-
vanced, or so much thereof as should remain in the business, must be
paid back to plaintiff, with a proportionate share of profits, plaintiff and
the other stood towards each other in a quasi partnership or joint ad-
venture relation.

2. SAME—DEATH OF PARTNER—LIABILITIES OF SURVIVOR.

Where plaintiff advanced money to A. to be used in a quasi partner-
ship adventure, and A. afterwards became an equal partner with de-
fendant for the purpose of carrying on the venture, and A. subsequently
died, plaintiff was entitled to recover from defendant as surviving part-
ner, and not from A.'s personal representative, the value of A.'s in-
terest in the firm business up to the amount due from him to plaintiff for
the original advancement made by plaintiff, and the proportion of the
profits which it was agreed by A. that plaintiff was to have.

3. SAME—SETTLEMENT OF LIABILITIES—NECESSITY OF ACCOUNTING.

The amount thus due plaintiff could only be ascertained by an account-
ing in equity.

4. SAME—EVIDENCE OF AMOUNT DUE—APPRAISEMENT—ABSENCE OF NOTICE.

Where plaintiff advanced money to A. to be used in carrying on a
certain business under a quasi partnership agreement, and A. subsequently
became a partner with defendant, an attempted appraisement of the assets
of the firm of A. and defendant, and a sale of the good will, made with-
out notice to plaintiff, was of no effect as against him on the question
of the sum to which he was entitled by virtue of his agreement with A.

5. ACTION—PROSECUTION—STAY.

Plaintiff advanced money to A. to be used in a certain business under
a quasi partnership arrangement by which plaintiff was to share in the
profits of the business. A. subsequently engaged in the partnership with
defendant. Plaintiff purchased goods from the firm during a number

of years under an arrangement by which the amount which he owed the firm was to be offset against the sum owed to him by A. A. afterwards died, and defendant, as surviving partner, assigned the claim of the firm against plaintiff to a third person. *Held* that, since plaintiff was entitled to set off against the claim for merchandise the amount due him under his agreement with A., an action on the claim by the assignee for the benefit of the surviving partner should be stayed until the conclusion of the accounting, to ascertain the amount due plaintiff, upon the latter's giving proper security for the payment of any sum found due from him.

Action by Thomas Kirkwood against Harry M. Smith, individually and as surviving partner, etc., and others. Judgment for plaintiff.

H. S. Sayers, for plaintiff.

William R. Hill, for defendant Smith.

Augustus H. Skillin, for administratrix.

SCOTT, J. On June 2, 1891, the plaintiff and one Charles S. Locke entered into a written agreement, whereby plaintiff agreed to advance the sum of $10,000 in cash, to be invested in the business of manufacturing, buying, and selling plumbing, steam, and gas-fitting materials, as part of the capital stock of the business. Locke agreed to carry on the business to the best of his ability, and it was agreed that the consideration to be paid plaintiff should be one-quarter of the net profits, instead of interest on the investment. The agreement was to continue for five years, and provision was made that upon the death of Locke or the expiration of the term of the agreement the $10,000, or so much of it as remained in the business, should be paid back to plaintiff, with the proportionate part of the profits then due and unpaid to him. Plaintiff advanced the money, and with it Locke began and carried on business under the name of C. S. Locke. On April 16, 1892, Locke and the defendant Smith formed a copartnership for the purpose of carrying on the same business, which was to continue for five years, and be conducted under the firm name of C. S. Locke & Smith. Locke agreed to contribute to the capital of the business all of the stock on hand and other assets of the business carried on by him, valued, for the purposes of the agreement, at $10,000, and also the sum of $5,000 in cash, which sum was to be paid to him by Smith for one-half interest in the good will of the business. Smith agreed to contribute $15,000 in cash to the capital of the business. It was agreed that Locke's contribution of stock and assets was to be made "subject to the payment of the liabilities of such business" previously carried on by Locke, the valuation of $10,000 being estimated as the value of said contribution over and above said liabilities. The profits and losses were to be shared equally, and each partner was to be entitled to draw a certain sum per annum for his personal expense and support; the profits in excess of such drawings to remain in the business until the end of the then current year, to be then divided upon a settlement and adjustment of the accounts. February 1st in each year was agreed upon as the date with reference to which accounts were to be made up and profits ascertained and divided. This agreement was carried into effect, and the copartnership thus formed carried on business until Locke's death,

intestate, on November 15, 1900. Although the respective terms fixed by the agreement between plaintiff and Locke and the copartnership between Locke and Smith both expired long before Locke's death, there was no settlement or liquidation, but the respective relations established by the agreements continued. Plaintiff did not learn of the formation of the partnership between Locke and Smith until after it had been consummated. At the time of the creation of the partnership between Locke and Smith, the latter knew nothing of the arrangement between Kirkwood and Locke. He learned of it, however, afterward, and some years before the termination of the partnership by Locke's death he saw and read the agreement between Locke and Kirkwood. The plaintiff bought goods from the firm from time to time, and until the period fixed for the continuance of his agreement with Locke was about to expire it was his habit to pay for his purchases every two or three months. When the five years for which his arrangement with Locke was made were about to expire, plaintiff seems to have been somewhat insistent that he should be repaid; but no agreement to this. effect was made. He continued to buy rather largely from the firm, but did not pay as he had formerly done. He did, however, loan the firm money from time to time, and the firm's books contained an account current with him. These books were kept under Locke's direction, and copies of the annual balance sheet were regularly sent to plaintiff. The share of the profits to which plaintiff was entitled under his agreement with Locke were paid over to him from time to time, usually by checks drawn to Locke's order and indorsed to plaintiff, and were charged against Locke in his account with the firm. Statements of plaintiff's standing with the firm were made from time to time, and on January 31, 1900, a few months prior to Locke's death, a statement was prepared, whereby it appeared that something over $14,000 was due to plaintiff; this result being arrived at by crediting him with his original advance of $10,000 and the proportion due him of the profits for several years, with interest, and charging him with the aggregate of his merchandise account. Since, however, it was Locke personally, and not the firm, who owed plaintiff, this statement correctly represented plaintiff's standing only if Locke's interest in the firm equaled his indebtedness to plaintiff. After the dissolution of the firm by the death of Locke, Smith, the surviving partner, assigned to one Pearson the claim of the firm against plaintiff for the amount charged against plaintiff for merchandise bought prior to Locke's death. This assignment was merely formal, and the action which was commenced thereon is now being prosecuted for the benefit of Smith as surviving partner. Plaintiff also bought goods from Smith after the dissolution, and for the value of these Smith is also suing.

I cannot find that the firm ever assumed absolutely the indebtedness of Locke to plaintiff; but there can be no doubt, I think, that some sort of an agreement was arrived at, some years prior to Locke's death, that plaintiff's purchases from the firm should be offset by the amount due to him from Locke, so far as Locke's interest in the firm would pay them; and it can, I think, be fairly inferred that plaintiff's somewhat large purchases from the firm were made in reliance

upon this arrangement. After Locke's death plaintiff commenced an action in Kings county, wherein he set up the agreement between himself and Locke and the copartnership agreement between Locke and Smith, and claimed that the legal effect of these agreements was to make him a copartner in the firm of C. S. Locke & Smith. In this connection he was unsuccessful. 82 App. Div. 411, 81 N. Y. Supp. 891, 178 N. Y. 582, 70 N. E. 1101. In its opinion the Appellate Division expressed itself as holding the view that no partnership had been established between Kirkwood and Locke, and that the agreement between them provided merely for a loan of money. It was perhaps not necessary to pass upon either question in order to decide the case then presented, but it may be assumed that the arrangement between plaintiff and Locke did not create strictly and technically a relation of partnership. It did, however, contain certain elements which usually enter into partnership agreements. The $10,000 was advanced for a special purpose, and its use was strictly limited; Locke could use it only in establishing and carrying on the specified business. Plaintiff was to be paid no interest, but was to receive in lieu thereof a proportion of the profits, as profits, and not as interest; and finally Locke did not agree ever to repay the $10,000 absolutely and at all events, but only "such part of it as remained in the business" when the time for liquidation arrived. To the extent that the amount to be repaid might be lessened if the business proved unsuccessful, plaintiff assumed the risk of losses. The relationship thus created certainly involved the repose by the plaintiff in Locke of a considerable degree of trust and confidence, and created something in the nature of a quasi partnership, or what has been described as a joint adventure. There can be no doubt that as between plaintiff and Locke an action for an accounting could have been maintained, for only by an accounting could the amount to be paid by Locke be determined. Brennan v. Gale, 56 App. Div. 4, 67 N. Y. Supp. 382. The result of this adventure was the establishment of the business and the acquisition of the stock and assets afterward contributed by Locke to the copartnership of Locke & Smith; and so far, certainly, as concerned Locke, plaintiff retained his interests and rights. Those interests and rights, as against Locke, were communicated to Smith and recognized by him. Up to the day of Locke's death plaintiff was entitled to receive from him so much of the original $10,000 as still remained in the business, and so much of the agreed percentage of Locke's share of the profits of the business as had been earned and not paid. In the very nature of things, the ascertainment of the precise sum due could be ascertained only by an accounting. Upon Locke's death, plaintiff still retained the right to the payment of these sums out of whatever interest Locke had in the firm when it was dissolved by his death. In legal effect the position created by Locke's death was not dissimilar to that presented in Nirdlinger v. Bernheimer, 133 N. Y. 45, 30 N. E. 561, wherein an action for an accounting was upheld. In that case the plaintiff was an undisclosed subpartner with his brother in an enterprise or adventure in which the brother and the defendant, Bernheimer, were engaged. The partnership between the brothers was perhaps more complete technically than the quasi partnership

between Kirkwood and Locke, but that was not the determining factor in the case. It was that the plaintiff, by virtue of his agreement with his brother, was entitled to share in the profits of the adventure as profits, and that from the nature of the business the amount to which he was entitled could only be ascertained after an accounting. As was pointed out in that case, so it may be said in this, that the defendant called on to account is placed in no other or worse position than if the action had been prosecuted by the deceased partner for an accounting and discovery of his interest in the firm property. The plaintiff's claim is only for the recovery of what is due him out of Locke's interest, and it is that interest which is to be ascertained. When it is considered that, in order to fix plaintiff's right to recovery, there must be found, first, how much of the original $10,000 still remains invested in the business properly to be credited to Locke's interest therein; secondly, how much profits have been made for a number of years, and with which Locke should be credited; and, thirdly, whether Locke's interest in the firm equaled the amount due to plaintiff, and, if not, how much it amounted to, it will be readily seen that only an accounting in equity will afford adequate relief. I do not consider that plaintiff should be concluded by the appraisement agreed to between Smith and Locke's personal representative, nor by the sale of the good will. The appraisement was of the most perfunctory character, and no notice was given to plaintiff of either it or the sale; so that he was in no position to protect his interest. Smith was perfectly cognizant of the agreement between plaintiff and Locke and of the former's claim upon Locke's interest in the firm assets, and should at least have afforded plaintiff an opportunity to be present at the appraisement and sale. My conclusion is that plaintiff, under his agreement with Locke, is entitled to recover directly from the surviving partner, and not from Locke's personal representative in the usual course of administration, whatever may be found to have been the value of Locke's interest up to the amount due from Locke for the advance and the agreed proportion of the profits, and that the amount thus due can only be ascertained by an accounting. I am also of the opinion that as to plaintiff the attempted appraisement of the firm's assets and the sale of the good will should be set aside and declared ineffective and of no avail. Under the course of business long acquiesced in by the firm, plaintiff will be entitled to set off against the claim against him for merchandise purchased before Locke's death the amount that may be found due to him under his agreement with Locke. Pearson's action for the value of this merchandise is obviously prosecuted for the benefit of the surviving partner. That action should, I think, be stayed until the conclusion of the accounting; but since it is very uncertain how much Locke's interest in the firm will prove to be, or whether it will be sufficient to pay the whole or any considerable part of the merchandise claim, the plaintiff should, as a condition of staying the Pearson action, give proper security for the payment of any sum which may, upon an accounting, be found due from him to the firm. The claim for goods purchased from Smith after the dissolution of the firm rests upon an entirely different footing, and I see no reason why the action for that should be stayed.

To the extent indicated, judgment will go for the plaintiff, and since he has succeeded in his main contention, it will be with costs; the question as to an extra allowance being reserved until the entry of final judgment.

Judgment accordingly.