### KIRKWOOD et al. v. SMITH et al.

(Supreme Court, Appellate Division, First Department. June 11, 1909.)

1. PARTNERSHIP (§ 330*)—ACCOUNTING—INTERLOCUTORY JUDGMENT—EFFECT.

An interlocutory judgment, in proceedings against a surviving partner for an accounting, is binding on the referee appointed to take the account.

[Ed. Note.—For other cases, see Partnership, Dec. Dig. § 330.*]

2. APPEAL AND ERROR (§ 1097*)—SUBSEQUENT APPEALS—FORMER DECISION OF LAW OF THE CASE.

The affirmance of an interlocutory judgment makes such judgment the law of the case, so far as the court affirming the judgment is concerned.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358–4368; Dec. Dig. § 1097.*]

3. PARTNERSHIP (§ 333*)—ACCOUNTING—OPERATION OF INTERLOCUTORY JUDGMENT—INTEREST.

An interlocutory judgment, in proceedings against a surviving partner for an accounting, which states that accounts between the partners were stated as of a certain date, precludes the right of either partner to interest on profits that were not paid to the partners before that date; there being no finding with reference to interest in the judgment.

[Ed. Note.—For other cases, see Partnership, Dec. Dig. § 333.*]

4. EVIDENCE (§ 445*)—PAROL EVIDENCE AFFECTING WRITINGS—SUBSEQUENT AGREEMENT BETWEEN PARTNERS.

Where a partnership agreement provides for an annual accounting and the division of the profits, but makes no mention of interest on profits that are not withdrawn after such accounting, a subsequent oral agreement allowing interest on such profits is valid.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2052–2065; Dec. Dig. § 445.*]

5. PARTNERSHIP (§ 333*)—ACCOUNTING—INTEREST ON PROFITS NOT WITHDRAWN.

In an action against a surviving partner for an accounting, if one partner is allowed interest on his share of the profits that are not withdrawn from the business, the copartner should also be allowed interest.

[Ed. Note.—For other cases, see Partnership, Dec. Dig. § 333.*]

6. PARTNERSHIP (§ 333*)—ACCOUNTING—VALUE OF PROPERTY CHARGED TO SURVIVING PARTNER.

In an accounting by a surviving partner, in order to fix the amount payable out of the deceased partner's share to a person from whom he borrowed money for use in the business, the surviving partner should be charged with the value of the property which he realized on a sale of the property by him after the decease of his partner, rather than the market value at the time of such decease.

[Ed. Note.—For other cases, see Partnership, Dec. Dig. § 333.*]

7. PARTNERSHIP (§ 342*)—ACCOUNTING—CONSTRUCTION OF JUDGMENT.

After the death of a partner, his administratrix agreed with the surviving partner to transfer her interest in the copartnership property, the value to be fixed by appraisers, and that the surviving partner take the property and account for it at such valuation. In an action by the creditor of a deceased partner who had loaned him the money with which to establish the business on an agreement to receive a share of the profits, an interlocutory judgment directed the setting aside of the award of the appraisers, but did not expressly annul the agreement, although the complaint prayed an annulment. *Held*, that the effect of the interlocutory judgment was to annul the entire agreement, as well as the award and action taken thereunder, as the agreement was entire.

[Ed. Note.—For other cases, see Partnership, Dec. Dig. § 342.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by Fanny J. Kirkwood and others, as executors, etc., of Thomas Kirkwood, deceased, against Harry M. Smith, individually and as surviving partner, etc., and others. Judgment for plaintiffs and defendants appeal. Reversed.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Charles De Hart Brower, for appellants.

H. Schieffelin Sayers, for respondents.

LAUGHLIN, J. On the 17th day of May, 1905, an interlocutory judgment was entered herein, pursuant to a decision of the court on the trial of the issues at Special Term, adjudging, so far as material to a decision of the questions now presented for review: That the plaintiffs were entitled to an accounting by the defendant Smith "with reference to all dealings and transactions between plaintiff and Charles S. Locke, now deceased, and between Charles S. Locke and the defendant Harry M. Smith as copartners under the style of C. S. Locke & Smith, and between the plaintiff and both of said persons and the firm formed by them, subsequent to the 31st day of January, 1903." That accounts had been stated between the plaintiff and Charles S. Locke and Harry M. Smith "as of January 31, 1900, whereby it was found that there was due the plaintiff by Locke out of his interest in the firm, after computing plaintiff's advances to the said Locke, and his share of the profits of the firm, and allowing for merchandise received from said firm and payments made, a balance of $12,312.60, which balance does not take into account the advances by plaintiff of the sum of $2,000 on or about the 29th day of March, 1900, nor merchandise received by him subsequent to the 31st day of January, 1900, and that plaintiff is entitled to be paid by the defendant Smith, as surviving partner, whatever amount may be found due to him, if any, after such accounting, up to the value of Locke's interest in said firm. * * * That the attempted appraisement of the assets of the firm of C. S. Locke & Smith and the sale of the good will of said firm and the appropriation by the defendant Smith of the firm name of said firm, are set aside, declared ineffective and of no avail, and that defendant Smith shall account for the value of the same." That there be set off against the plaintiff for merchandise purchased before the death of Locke "so far as it goes, the amount that may be found due plaintiff as above mentioned." That an action brought by defendant Pearson against plaintiff to recover for the value of said merchandise, which was then pending undetermined, be stayed until the conclusion of the accounting and the entry of final judgment, upon plaintiff giving proper security for the payment of any sum which might, upon the accounting, be found due from him to the firm over and above the amount due to him. That it be referred to the referee designated in the interlocutory judgment "to take and state an account of all dealings and transactions between the plaintiff and the defendant Smith and Charles S. Locke, now deceased, and the firm of C. S. Locke & Smith, and between Charles S.

Locke, now deceased, and the defendant Smith since the 31st day of January, 1900, and what amount, if any, is owing to the plaintiff from the said firm and the said Locke and the said Smith." That in taking the account the referee should "make all just allowance to the parties as between themselves and to report what on the balance of the said account shall appear to be due from either party to the other."

The trial justice, who made the decision on which the interlocutory judgment was entered, delivered an opinion in which the questions presented were quite fully discussed. Kirkwood v. Smith, 47 Misc. Rep. 301, 95 N. Y. Supp. 926. On appeal to this court the interlocutory judgment was affirmed, without opinion, 111 App. Div. 923, 96 N. Y. Supp. 1132. The interlocutory judgment was binding upon the learned referee, and by its affirmance it became the law of the case so far as this court is concerned.

It is conceded that the learned referee committed an error which requires a modification of the judgment by reducing the amount adjudged to be due to the plaintiffs by the sum of $1,622.84, and interest thereon for the period of 7 years, 2 months, and 21 days; but, for reasons to be stated presently, I am of opinion that the judgment should be reversed.

The first contested point presented arises on the refusal of the referee to receive evidence of a parol agreement between the parties with respect to interest on undrawn profits and to credit the appellant Smith with interest on the amount of his undrawn profits left in the business from year to year from the commencement of the copartnership. The copartnership articles provided that the accounts of the partners should be settled annually, and that the surplus profits of each partner as shown by such accounting should be then withdrawn. The first entry in the copartnership books relating to such interest was made by the direction of the appellant Smith on the 16th day of November, 1900, the day following the death of his partner. His claim is that notwithstanding the fact that the copartnership articles are silent on the question as to whether or not interest was to be allowed on undrawn profits, and the further facts that interest on such undrawn profits was never credited on the books of the copartnership until after Locke's death, and that the accounts were stated annually without allowing such interest, although such profits were customarily left in the business after the annual accountings, yet that there was an agreement between him and his copartner resting in parol, that such interest should be allowed.

In the questions propounded to the bookkeeper seeking to elicit this evidence, no time is indicated; but it is fairly to be inferred that it was after the execution of the copartnership articles, for the objection was not taken that prior parol negotiations which were merged in the written agreement were called for by the questions, and it is evident that the questions relating to interest would be most likely to arise when they departed from the plan, contemplated by the copartnership articles, of withdrawing these surplus profits and determined to let them remain in the business. For aught that appears, the conversations may have been had subsequent to the time when the accounts

were last stated; and, if so, it is quite clear that the question would not be foreclosed by the interlocutory judgment as to such surplus profits remaining in the business thereafter pursuant to such parol agreement, and, if the agreement was made after the last annual accounting, I fail to see why it was not competent for the partners, as between themselves, to have it relate back so that they should receive interest on the surplus profits which they had allowed to remain in the business after each annual settlement of the accounts, instead of withdrawing the same. As, between themselves, this could have been legally done without consideration, and, as against plaintiffs' testator, then or thereafter leaving surplus profits in the business would be a sufficient consideration. The evidence as to this interest was objected to on the ground, among others, that the agreement was not pleaded. As it only arose on the accounting, I think it was not necessary for defendant to plead it. The learned referee, in excluding evidence offered to show such agreement, doubtless acted upon the theory that this claim was foreclosed by the interlocutory judgment, which, as already appears, adjudged that accounts were stated between the parties as of the 31st day of January, 1900, and that the rights and interests of the parties as of that date were thereby adjudicated. It would seem quite clear that the interlocutory judgment foreclosed any claim for interest on undrawn profits which accrued prior to the 31st day of January, 1900, based on any agreement made prior to that time; but it does not follow that the appellant Smith was not entitled to interest on his undrawn profits from that date until the date of the death of his copartner, which was November 15th of the same year. At the time that account was stated, January 31, 1900, it appears that the appellant Smith had in the business, exclusive of the capital which he was required to and did invest pursuant to the copartnership articles, the sum of $21,829, and at the death of Locke November 15, 1900, the sum of $19,213.36; but neither the precise amount of his profits remaining in the business at all times between those dates nor the average nor minimum amount appears, and consequently there is nothing to show the amount of the interest for this part of the entire period.

The referee excluded testimony of the bookkeeper of the firm offered by appellant to show a conversation between him and his deceased partner, by which it was agreed that the surplus over and above the capital left in the business by each partner should draw interest, and also a direction given by the decedent Locke to have such interest credited. In this we think the learned referee erred. It is true the copartnership articles were under seal, and that they do not so provide, and it is quite improbable that such an agreement was made part of the last annual accounting, at least, in view of the fact that no interest was credited up to the appellant Smith until after the death of his partner; but, as interest could have been waived, that goes to the weight rather than to the competency of the evidence. It was competent for the parties, after executing the copartnership articles, which were under seal, to modify the same by parol agreement so that the surplus profits, which it was therein provided should be withdrawn

after each annual accounting, should remain in the business at interest; and if they were so modified, although the interlocutory judgment foreclosed the claim as to interest prior to the 31st day of January, 1900, at least so far as the same was based on any agreement made prior to that time, the appellant would be entitled to interest on his surplus profits left in the business pursuant to that agreement from the date of the account stated down to the dissolution of the copartnership by the death of his copartner, or for such part of that time as the surplus profits remained in the business. The interlocutory judgment is not an adjudication that such parol agreement as to interest was not made. It merely in that regard adjudicates the state of the accounts on a certain day, based on the account stated. The exception therefore to the exclusion of this evidence requires a reversal.

It appears that appellant Smith's direction to the bookkeeper with respect to crediting interest on undrawn surplus profits left in the business was to credit interest to each partner on the same basis, and that the decedent Locke was at the same time credited with the sum of $1,894.91 for interest on his undrawn balances of surplus profits and has been given credit therefor in appellant Smith's account. No objection having been filed to this item, as we understand the record, although the point is not taken by the appellant, that credit was allowed to stand, although the credit for the like item to appellant Smith has been disallowed. This is most inequitable, for it is evident that both should be credited with interest, or neither should be so credited, although, technically speaking, there may have been no error in this regard, owing to the fact that the point was not raised on the accounting. It would seem, however, that the objection to the credit of interest to appellant Smith was sufficient to present the question as to the right of the objector to a like credit depending on the same facts, and both credits should be allowed in whole or in part, or disallowed, on the rehearing. Inasmuch, however, as certain other alleged errors relating to questions which have been discussed will probably arise on a new accounting, we deem it proper to express our views thereon.

The learned counsel for the appellants further contends that, under the interlocutory judgment, the appellant Smith was only required to account for the value of the copartnership property on the day of the death of his copartner, Locke. It appears that upon the death of Locke an inventory of the firm property, which the parties had prior thereto commenced to take preparatory to the annual settlement of their accounts at the end of the following January, was completed, and valuations on each item of property therein enumerated were set down by direction of appellant Smith at what he deemed to be the then market value of the same, which he estimated, as to the stock of goods, on what manufacturers were then selling like goods for to jobbers such as the firm of Locke & Smith had been, and which constituted the ruling market prices. He then took over all of the property into what he denominates a "new business," which he conducted under the name "Harry M. Smith, sole surviving partner of C. S. Locke & Smith," and he sold the old goods with the new purchased subsequently in that business, but kept separate accounts

thereof. Early on the hearing before the referee, the question arose as to whether appellant Smith was to be required to account for the value of the property on the day of his copartner's death, or whether he was to account for the amount received on subsequent sales thereof by him in said business; and on motion of counsel for the plaintiff the court directed "that the defendant Smith account for the actual prices realized for the goods shown in Schedule A and file such account" within 30 days. Schedule A referred to was the inventory of the firm property to which reference has been made. That schedule, which was made a part of appellant Smith's account as previously filed pursuant to the requirements of the interlocutory judgment, showed the cash market value of the stock on hand at the time of the death of Locke at $21,921.90, which was evidently arrived at by a percentage reduction from a valuation, also set forth in said account, of $23,-546.28, which was evidently the valuation according to the list prices previously fixed by manufacturers who sold more than 75 per cent. of such goods, and therefore controlled the market, but from which percentage reductions were made from time to time. Later on, on the accounting, the record contains the following recital:

"The defendant Harry M. Smith having been directed by the referee to file an accounting of the proceeds of the merchandise on hand at the death of Charles S. Locke, it was stipulated in lieu of filing said account, and for the purposes of this action, that the amount of the prices received by said Harry M. Smith for the merchandise on hand at the death of Mr. Locke is to be taken and deemed to be $38,875. This stipulation is without prejudice to the contention of the defendant Smith that under the order of reference herein he is not required to account for the price at which the stock was sold."

Counsel for plaintiff thereupon moved "to strike out all the testimony as to the prices received by the defendant Smith for the merchandise on hand at the death of Mr. Locke, on the ground that it is irrelevant, incompetent, and immaterial, and on the further ground that the judgment directs us to account for the value of the merchandise as of the date of the death of Mr. Locke." The motion was denied, and counsel for plaintiff duly excepted. Later on it was stipulated that the expense of selling this merchandise incurred by the appellant Smith, without any allowance for his own time, was $6,700. In the account as stated by the referee, the appellant Smith was charged as of November 14, 1900, the date of the death of his copartner, Locke, for this item of $38,875, less the sum of $6,700, the expense of selling the merchandise. It thus appears that the appellant Smith has been charged with the net proceeds of the sale of the property as of the date of the death of Locke, although it appears by the testimony that the property was sold from time to time extending over a period of more than two years.

The learned counsel for the appellant contends that his client has been compelled to account as surviving partner, the same as if the action had been brought by the representative of his deceased partner, and that, instead of being charged with interest on each sale from the date thereof, he has in effect been charged with interest on the entire amount as if all the sales had been made immediately

following the death of his partner. The learned counsel for the respondents does not undertake to justify this theory; but he claims, as we understand his contention, that the appellant has not been charged with the proceeds of the sales, but with the value of the property at the date of Locke's death, arrived at by taking into consideration, with other evidence, the evidence with respect to the amount received by the appellant Smith for the merchandise on the subsequent sales thereof at retail. That theory cannot be sustained upon this record. It is inconsistent with the principal rulings, if not with all of the rulings made by the referee on the hearing. Counsel for appellant Smith maintained throughout the hearing that his client was accountable only for the value of the property on the day of Locke's death, and this contention was persistently and consistently resisted by counsel for respondents.

Moreover, for the purpose of obtaining a specific ruling on the point by the referee, counsel for appellant showed by competent evidence that in the inventory of the firm property on hand at the death of Locke was included bath tubs of a certain type and manufacture, alluded to in the evidence as standard articles having a fixed market value, and he offered evidence by a witness competent to speak on the subject of the price at which such bath tubs were selling by the manufacturers to jobbers on the day of Locke's death. This evidence was objected to by counsel for the respondents upon the ground, among others, that it was not the proper measure of damages, and he asserted that the price received by the appellant Smith on a sale of the merchandise, less the cost of selling the same, was the true measure of damages, and was that provided for in the copartnership agreement on a dissolution of the firm, which he claimed was applicable to and controlling on the accounting.

Counsel for the appellant Smith conceded that such would be the rule if the action for the accounting had been brought by the personal representative of the deceased partner; but he contended that, inasmuch as the action was based on an agreement with said partner, the market value of the property at the time of Locke's death should be controlling, the same as if the plaintiff had brought the action against both partners in their lifetime. The referee sustained the objection, without comment, and appellant Smith excepted. That was in effect a definite ruling by the referee that the appellant Smith was accountable, not for the market value of the property on the day of Locke's death, but for the amount realized thereon as on a liquidation by him as surviving partner. If therefore the interlocutory judgment is to be considered as requiring the appellant Smith to account for the value of the property at the time of Locke's death, the exception and the exclusion of evidence tending to show such market value is fatal to the judgment; and if, on the other hand, it is to be construed as requiring appellant Smith to account as a surviving partner, then it is manifest that he should not have been required to account for the proceeds of sales prior to the times at which the respective sales were made.

· The record discloses neither the items of the sales nor the dates on which they were made, and therefore it would be impossible to properly modify the judgment in that regard if we should hold appellant accountable for the proceeds of the sales. We are of opinion, however, that it was intended by the interlocutory judgment to require the appellant to account as on a liquidation by a surviving partner. The representative of the deceased partner was a party defendant. The plaintiffs' testator was not a member of the firm. His rights rested upon an agreement with the decedent Locke for a share of the latter's interest in the business prior to the formation of the firm, and upon certain evidence tending to show a recognition of that agreement by the appellant Smith. The action necessarily involved a settlement of the accounts between the surviving partner and the estate of his deceased partner, for the interest of the plaintiff attached to the share and interest of the latter in the business. The importance of the question arises from the fact that after the death of Locke the market value of the stock of merchandise on hand rose materially. This was shown by uncontroverted evidence and is indicated by the amount realized on the sales of the merchandise by the appellant Smith, which is largely in excess of the inventoried value of the property at the time of Locke's death.

The appellant also bases his contention that he is accountable only for the value of the property at the time the firm was dissolved by the death of Locke, and that this was the intention of the interlocutory judgment, on the fact that on the 9th day of March, 1901, he and the administratrix of Locke entered into an agreement in writing whereby the administratrix undertook to sell, assign, and transfer her interest in the copartnership property, exclusive of the good will, at a value to be fixed by appraisers as arbitrators therein designated, and that he take over the property and account for it as surviving copartner at such valuation. The complaint prayed judgment for the annulment of the award made pursuant to this agreement and for an annulment of the agreement itself. The interlocutory judgment expressly vacates and sets aside the award, the attempted sale of the good will, and the appropriation by the appellant Smith of the firm name, but does not expressly annul the agreement. We are of opinion that the effect of the interlocutory judgment was to annul the entire agreement, as well as the award made and other action taken thereunder. The agreement was entire. It provided for turning over the property to the surviving partner at a valuation to be fixed by appraisers as arbitrators and to be made in the form agreed upon on or before the 10th day of April, 1901, which was within one month and a day after the agreement was made. When the award made by the arbitrators and the attempted transfer of the firm name and good will were vacated and set aside and the surviving partner was required to account for the value of all the property, the court did not intend to make a new agreement between the administratrix of the deceased partner and the appellant, which would be the effect of the decision if it permitted any part of the agreement to stand, for the administratrix did not agree to turn any part of the property over to the appellant

upon condition that he account for its value, but upon condition that he pay therefor the value fixed by appraisers as provided in the agreement.

Moreover, it is not entirely clear, in view of the agreement between the plaintiff's intestate and Locke, by which the former was to convey a certain share and interest in Locke's share and interest in the business, that the personal representative of Locke could, without the consent of the plaintiff's intestate, make an agreement with the appellant with respect to the value of the property changing the ordinary rule in such cases with respect to rights that had become fixed, by which the property should be sold and the surviving partner account therefor, which would be binding upon the plaintiff's intestate, and, if the court had intended to so rule on deciding the main issues, it is probable that this question would have been discussed in the opinion. Although the interlocutory judgment is not entirely clear on this point, it is quite evident that that is what was intended by the justice presiding at the trial, who, in his opinion, in discussing this point, said:

"I do not agree that plaintiff should be concluded by the appraisement agreed to between Smith and Locke's personal representative, nor by the sale of the good will. The appraisement was of the most perfunctory character, and no notice was given to plaintiff of either it or the sale, so that he was in no position to protect his interest. Smith was perfectly cognizant of the agreement between plaintiff and Locke and of the former's claim upon Locke's interest in the firm assets, and should at least have afforded plaintiff an opportunity to be present at the appraisement and sale.  *   *   *   I am also of the opinion that as to plaintiff the attempted appraisement of the firm's assets and the sale of the good will should be set aside and declared ineffective and of no avail.  *   *   *   To the extent indicated judgment will go for the plaintiff." 47 Misc. Rep. 301, 307, 308, 95 N. Y. Supp. 926, 930.

It is further to be observed that, at the time the agreement between the administratrix of Locke and the appellant was made, the appellant had already taken over all of this property and had doubtless disposed of a large part thereof.

The other questions presented are questions of fact, depending upon conflicting evidence, the weight of which we should not review at this time.

That part of the final judgment from which defendant Pearson appeals follows, on the facts here found, from the interlocutory judgment; but, since the state of the account may be materially changed on the new hearing, the part of the final judgment so appealed from should also be reversed.

It follows that the final judgment should be reversed, with one bill of costs to the appellants to abide the event, and the matter remitted to the same referee for a rehearing of the accounting. All concur.