## DAVIDSON v. RAFFERTY, Collector of Internal Revenue.

District Court, E. D. New York. June 19, 1929.

of Brooklyn, N. Y., and Ottamar Hamele, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for defendant.

INCH, District Judge. This is a suit to recover the sum of $18,016.07 representing an additional estate tax on the estate of one Isaac Sanger, deceased. The tax was duly paid under protest, and its return duly demanded and denied.

Isaac Sanger died January 16, 1918, leaving an estate duly valued at $2,522,090.89. A tax thereon of $275,092.72 was duly assessed and paid. Mr. Sanger left a will executed October 11, 1910, and a codicil executed April 15, 1913. Both will and codicil were duly probated.

In October, 1922, the collector of internal revenue in reviewing the tax already assessed determined that an additional tax was due, and on or about August 29, 1923, the amount of this additional tax was fixed at approximately $16,000, which with interest represents the sum now sought to be recovered.

This suit was commenced September 15, 1927, and is brought against "John T. Rafferty, Collector of Internal Revenue." The complaint alleges that said defendant "now is and was at all the times hereinafter stated, the Collector of Internal Revenue for the First District of New York." The suit is for more than $10,000. It is not alleged that "he (the Collector) is dead or is not in office." Title 28, § 41 (20), U. S. C. A.

It would appear that this suit could not have been brought against the collector in his official capacity. Rankin Gilmour & Co. v. Newton (D. C.) 270 F. 332.

Jurisdiction cannot be presumed nor even inferred. Continental Ins. Co. v. Rhoads, 119 U. S. 237, 7 S. Ct. 193, 30 L. Ed. 380; Ex parte Smith, 94 U. S. 455, 24 L. Ed. 165; Robertson v. Cease, 97 U. S. 646, 24 L. Ed. 1057.

It cannot be conferred by consent. Chicago R. Co. v. Willard, 220 U. S. 413, 31 S. Ct. 460, 55 L. Ed. 521.

It cannot be shown by argument. Wolfe v. Hartford Ins. Co., 148 U. S. 389, 13 S. Ct. 602, 37 L. Ed. 493.

The merits of an action cannot be considered in determining the jurisdiction. Flanders v. Coleman, 250 U. S. 223, 39 S. Ct. 472, 63 L. Ed. 948.

It is the duty of the District Court to inquire into the question of its jurisdiction on its own initiative and at the outset of the litigation. Cunard Co. v. Smith (C. C. A.) 255 F. 846.

Frank Aranow, of New York City, for plaintiff.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y., and C. M. Charest, Gen. Counsel, Bureau Internal Revenue, of Washington, D. C. (Albert D. Smith, Asst. U. S. Atty.,

It is likewise the duty of the defendant to bring the matter to the attention of the court. Gilbert v. David, 235 U. S. 561, 35 S. Ct. 164, 59 L. Ed. 360.

■ The court, however, has jurisdiction to pass on the question of whether such jurisdiction exists. Nashville R. Co. v. Taylor (C. C.) 86 F. 168; Levinson v. U. S., 258 U. S. 198, 42 S. Ct. 275, 66 L. Ed. 563.

This suit must be on the theory that it is against Mr. Rafferty individually and the word "collector" simply used as an identification.

■ This suit is an exercise by plaintiff of a common-law right. U. S. v. Emery, Bird, Thayer Realty Co., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825. It is purely personal in nature. Sage et al. v. U. S., 250 U. S. 33, 39 S. Ct. 415, 63 L. Ed. 828. It survives against the representatives of the deceased collector, Patton v. Brady, 184 U. S. 608, 22 S. Ct. 493, 46 L. Ed. 713, and not against his successor in office, Smietanka v. Indiana Steel Co., 257 U. S. 1, 42 S. Ct. 1, 66 L. Ed. 99; Detroit Hotel Co. v. Brady (D. C.) 275 F. 995. The basis of the suit is the receipt of the payment of tax, Phila. R. Co. v. Lederer (C. C. A.) 242 F. 492, on the theory that the collector had some agency in the subject-matter, Levy v. Wardell, 258 U. S. 542, 42 S. Ct. 395, 66 L. Ed. 758.

■ This being so, "a complaint against a collector 'individually' must show that the Constitution and laws of the United States are involved or diverse citizenship of the parties, to be maintainable in the United States District Court." Rankin Gilmour & Co. v. Newton, Collector (D. C.) 270 F. 332.

The complaint here does not allege diverse citizenship, but it does allege that a federal law is involved to wit, the Revenue Act of 1916 (39 Stat. 756). U. S. v. Emery, Bird, Thayer Realty Co., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825.

I shall therefore consider that this court has jurisdiction.

The sole question urged on the trial is one of law. The parties have submitted an agreed statement of the facts, which includes agreed copies of the will and codicil, the papers relating to the assessment of the tax and the rejection of the claim for refund, a contract between Mr. Sanger and his former partners made during his lifetime, to which reference will be subsequently made, and a contract between the surviving partners of Mr. Sanger's firm, to which reference will also be made.

It does not appear from the record that this agreed statement of facts was formally marked in evidence when the case was called for trial before me, but, as both parties stated at the trial that this was the agreement between them as to the facts, and argued accordingly, I shall consider that the same is duly before me as a part of the record.

A short time after the death of Isaac Sanger, the survivors of the copartnership and the representatives of the estate of Isaac Sanger and his legatees, joined, as was previously contemplated, in incorporating the corporation, Sanger Bros., and all the assets of the firm were duly transferred to it.

In my opinion, there is no ambiguity about the documentary evidence before me.

The question is, both parties contend, simply one of law. It arises over said tax on the sum of $122,958.23, transferred, after Isaac Sanger's death, on the books of the corporation, Sanger Bros., to the credit of Samuel Sanger.

This question can best be stated by reference to the arguments of the parties.

The government claims that this sum so credited was a part of the estate of Isaac Sanger; that it was not so placed to the credit of Samuel Sanger as a creditor of the estate of Isaac Sanger, nor was it paid to Samuel Sanger as a legatee under the will of Isaac Sanger.

The plaintiff claims that this sum does not represent any portion of Isaac Sanger's interest in the partnership; that it represents merely the extent to which his invested capital was greater than the real value of his interest; that Samuel Sanger had a good and valid claim against Isaac Sanger, and later his estate, for the crediting of this sum, and therefore this sum was not subject to the additional tax; that the sum did not represent any interest in any property which Isaac Sanger had at the time of his death, but was rightfully the property of Samuel Sanger by virtue of a contract between Isaac Sanger, Samuel Sanger, and others made four years before.

The tax was imposed pursuant to the provisions of the Revenue Act of 1916 (Act of September 8, 1916, 39 Stat. 756), which read as follows:

"Sec. 201. That a tax (hereinafter in this title referred to as the tax), equal to the following percentages of the value of the net estate, to be determined as provided in section two hundred and three, is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act, whether a resident or nonresident of the United States: [Schedule of rates.]

"Sec. 202. That the value of the gross

estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated: (a) To the extent of the interest therein of the decedent at the time of his death, which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate.

"Sec. 203. That for the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages, losses incurred during the settlement of the estate arising from fires, storms, shipwreck, or other casualty, and from theft, when such losses are not compensated for by insurance or otherwise, support during the settlement of the estate of those dependent upon the decedent, and such other charges against the estate, as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered; and

"(2) An exemption of $50,000. * * *"

The tax is on the net estate. The net estate is arrived at by first ascertaining the gross estate. The gross estate is found by taking all decedent's property of every kind and then finding what decedent's interest therein was at his death.

This ascertainment of decedent's interest is accomplished by duly considering his own proposed distribution thereof and its subjections to charges against it and the expenses of administration.

The charges to be thus considered are in general form set forth in the statute, and one of them is a valid existing claim or right on the part of another against the decedent's estate. As to this the act in different words and as to taxation expresses the well-known phrase applied to distribution that a decedent "must be just before he is generous."

Before proceeding to a decision of the matter, the conceded facts should be briefly stated.

For many years prior to 1914 a partnership, consisting of Isaac Sanger, Alexander and Cornelia Sanger, under the name of Sanger Bros., had conducted business at Dallas, Tex. Samuel Sanger and another were likewise, during this time, conducting business, with equal shares, under the partner-ship name of Sanger Bros., at Waco, Tex. On or about September 5, 1914, all these Sangers got together and merged both businesses into a single partnership. It was a family affair. Apparently the business conducted by both was successful.

It is apparent from the written documents that this merger, important though it was, in the progress of this family in business, was but a step looking towards a still longer step ahead of incorporation, a step, owing to the steadily advancing ages of the partners, more likely to maintain the business when such death should come. Accordingly we find in the said contract of 1914 the following provision:

"Third: Whereas, it is contemplated that the parties hereto may at some future date decide to incorporate the business of Sanger Bros. of Dallas and Waco, Texas, such incorporation to be based on the capital invested in said business by the parties hereto, as evidenced on January first previous, by said private ledger kept by Alex Sanger; it is hereby agreed and understood by and between the parties hereto, that in the event of such incorporation, one-seventh of the amount of the total stock issued by such corporation shall revert to the said Sam Sanger, and the balance, six-sevenths to be divided between Isaac, Alex and Cornelia Sanger in proportion to their investments as they may appear on the said private ledger kept by the said Alex Sanger.

"Fourth: In the event of the death of any of the parties hereto, the surviving parties shall have the right to purchase said interest either in cash or stock of a corporation to be formed at that time, said purchase to be based on the inventory of all assets to be taken December 31st prior to the death, on which inventory there is to be a deduction of 20% and the payments to be made in accordance with partnership agreement dated 1905 and 1910 and further retaining the right to defer the settlement as herein set forth twelve months after said December 31st, but in no event does the provision contained in this paragraph in any way conflict with the provisions of preceding paragraph number Three, wherein it is provided that in the event the parties hereto decide to incorporate the business of the said firm of Sanger Bros., the said Sam Sanger or his estate will receive one-seventh of the capital stock of such corporation.

"Fifth: It is further agreed by and between the parties hereto that no member of the firm shall have the right to withdraw

from said. firm or to dispose of their stock, in the event that a corporation is formed, without the consent of the parties hereto."

Paragraph second of this contract. indicates that Sam Sanger relinquished all the interest he had in the assets of his own firm so transferred to the new firm, and accepted for the time being "one-fourth of the net profits arising out of the business of Sanger Brothers."

Thus, as I read this contract of September 5, 1914, Sam Sanger gave up and transferred his independent business and any valued interest therein for one-fourth of the net profits of the new partnership, and on the distinct promise and understanding that, when these new partnership assets were transferred to a corporation, he had a one-seventh interest therein.

In paragraph "Third" the words "total stock" are used, while in paragraph "Fourth" the words "capital stock" appear. I take it that both are here intended to mean the same thing. People v. Pond, 37 App. Div. 330, 57 N. Y. S. 490.

I do not think there is any ambiguity about this.

We have Sam Sanger transferring his assets to a partnership in express contemplation that before long the assets of that partnership would in turn be transferred to a corporation, and that, when this occurred, his interest in such assets would be one-seventh of the total stock issued for such transfer. There was a valuable consideration for this promise of Samuel's partners.

There is not the slightest indication that these arrangements between the partners were made in order to avoid any tax or were a scheme to defraud. It was a plain and fair business arrangement between partners in a family partnership.

Counsel for the government argues in their brief that "from the standpoint of current income it was to the advantage of Samuel that the business be not incorporated." If this is so, it would seem to be all the more reason why Samuel Sanger should desire to have a fixed interest in the assets of the corporation when formed.

To be sure, paragraph XII of the agreement of October 12, 1918, provides that "the estate of Isaac Sanger shall be charged with an amount required to comply with an obligation of said Isaac Sanger to his brother Samuel Sanger under a certain agreement between them bearing date September 5, 1914." In a sense, and generally speaking, had not the agreement of September 5, 1914, contained the promise that it did, and then the interest of Isaac Sanger had been sold to a corporation, that interest would be considered a part of his estate. But even this would not avoid the right to have a valid claim deducted in arriving at the net estate.

However, it must not be overlooked that Samuel Sanger, prior to September 5, 1914, had a definite interest in a substantial amount of assets, which he voluntarily gave up when they became merged with the assets of his new partners, who, in turn, agreed that, when that partnership ended and the combined assets were transferred to the corporation, his interest would again arise in the combined assets so transferred, and should then be one-seventh. This transfer to a corporation took place and Sam Sanger's one-seventh interest thereupon became a fact.

This contract of 1914 was not an assignment by Isaac Sanger or the other partners of any specific sum to Sam Sanger.

It was an agreement between them as to the amount of the interest each partner should have. Whatever arrangements thereafter had to be made by the others in order to accomplish this, and in order to fulfill their contract of 1914 with Sam Sanger, did not make Sam Sanger's one-seventh interest a part of the estate of these others. His interest was fixed in 1914, conditioned on a transfer of all the assets to a corporation. When this corporation was formed and the assets transferred, that was the end of the matter so far as he is concerned. The remaining six-sevenths in the assets so transferred belonged to the other partners.

This view of the matter does not seem to me strained or unreasonable.

However, the contract of September 5, 1914, was a valid binding agreement upon Isaac Sanger.

Indeed, the collector of internal revenue seems to have considered the promise of Isaac Sanger to transfer his interest to the corporation, when formed, as a "valid and enforcible" agreement, "binding on decedent's estate."

In my opinion, therefor, this promise of Isaac Sanger, given, with that of the others, to Samuel Sanger, was based on a valuable consideration, and continued beyond the death of Isaac Sanger, so far as his estate then made it possible to fully and fairly perform. Drummond v. Crane, 159 Mass. 577, 35 N. E. 90, 23 L. R. A. 707, 38 Am. St. Rep. 460.

There seems to be no question as to

what Isaac Sanger would have done had he been alive. His executors plainly performed for him what he would have thus done had he been able to do so, and Samuel Sanger, in my opinion, had an absolute right to such performance. He had a valid existing claim against Isaac Sanger. Pond v. Starkweather, 99 N. Y. 411, 2 N. E. 42; Nirdlinger v. Bernheimer, 133 N. Y. 45, 30 N. E. 561.

There is no presumption present that this contract of 1914 was not to extend beyond his lifetime. Kernochan v. Murray, 111 N. Y. 306, 18 N. E. 868, 2 L. R. A. 183, 7 Am. St. Rep. 744; Chamberlain v. Dunlop, 126 N. Y. 45, 26 N. E. 966, 22 Am. St. Rep. 807. On the contrary, not only is the promise continued in a solemn agreement, duly signed by all parties, but we have a great deal of light thrown upon the subject by the earlier will and codicil of Isaac Sanger, above mentioned.

The will contained the following provision:

"As my interests are almost wholly in the State of Texas and in the firm of Sanger Brothers, and as it is my desire that said partnership may not be in any way embarrassed or even inconvenienced by my death, and as my confidence in my partners is unlimited, it is my will and desire that my interest in said co-partnership shall be absolutely fixed and determined as it may appear in the private ledger kept by my brother, Alexander Sanger, less a deduction of twenty per cent (20%) from the balance so appearing to my credit in said ledger as of January first next preceding my death, which balance should correspond with that appearing in a duplicate of said private ledger in the possession of myself and Cornelia Sanger, which said private ledger is examined and approved by me in each year.

"In the event that my firm shall become a corporation or corporations owning real estate or personal property, or both, or my surviving partners shall determine to convert the partnership assets into a stock corporation or corporations, my interest in said partnership fixed as hereinbefore directed, may be paid in shares of stock at the election of my partners, either wholly or in part, of such corporation or corporations, such shares of stock to be accepted by my executors and trustees at their par or face value for my interest in said firm assets and also by any of the legatees named herein at like value, in payment in whole or in part of their legacies and in lieu of cash.

"Nothing herein contained referring to my partnership interest in real or personal or mixed property is intended or is to be deemed to be in conflict with the agreements bearing date respectively May 16, 1905, and July 3, 1906, or any subsequent agreement between me and my partners. Should there be any real or apparent conflict between the said agreements and the terms of this my will, the articles of agreement or the terms of this my will shall prevail as my surviving partners may determine."

In the codicil executed several years later we find this:

"For it is my will and desire that all my just debts be paid out of my estate, as soon after my death as can be conveniently done. By debts as here used, it is not intended to include any debts that may be owing by the firm of Sanger Brothers, for which, as a member of said firm, my estate may be liable."

To be sure, both the will and the codicil were executed before the merger of the partnerships and the execution of the agreement in 1914. But these instruments show not only a desire and direction that the partnership survive, but that nothing be done in the ordinary administration of his estate to interfere with partnership obligations. The fact that Isaac Sanger made no further will after the agreement of 1914 is not without significance as to his desire that his executors carry out his promises.

Isaac Sanger died January 16, 1918, and within a few months thereafter steps were duly taken to incorporate the partnership resulting in the contemplated incorporation and the agreed distribution of the stock.

The agreement is dated October 12, 1918, and recites that:

"Whereas, Isaac Sanger departed this life on January 16, 1918 leaving a last will and testament etc., and—

"Whereas, said will authorizes said testator surviving partners to incorporate said business etc., now—

"Therefore the surviving partners and the executors do hereby agree to incorporate etc."

Under the agreement of 1914 Samuel Sanger was to receive, and had been duly promised, one-seventh of the capital stock. This stock could not be issued without a corresponding interest in the corporation, nor was it intended that any such empty transfer should take place. In order to fulfill the promise made, the amount necessary was fairly computed. The promise of Isaac

Sanger was in this way fairly and completely performed. Samuel Sanger in my opinion had the legal right to have this done in this way. Blair v. Herold (C. C.) 150 F. 199, affirmed (C. C. A.) 158 F. 804; Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969; Edwards v. Slocum, 264 U. S. 61, 44 S. Ct. 293, 68 L. Ed. 564; Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; In re Fieux, 241 N. Y. 277, 149 N. E. 857.

It was not a transfer by Isaac Sanger's estate to Samuel Sanger. It simply meant that the value of the interest of Isaac Sanger in the corporation was that much less and the value of the interest of Samuel Sanger was that much more, in accordance with the agreement of 1914.

There is no claim made by the government that Isaac Sanger made a transfer in contemplation of his death, nor, as I consider the conceded facts, could such claim be here made, nor was Samuel Sanger a legatee. There is no question raised as to the effect of death on the partnership, which ordinarily dissolves the partnership, for the will effectively avoids this. Burwell v. Cawood, 43 U. S. (2 How.) 560, 11 L. Ed. 378; Scholefield v. Eichelberger, 32 U. S. (7 Pet.) 586, 8 L. Ed. 793; Lincoln v. Orthwein (C. C. A.) 120 F. 880.

It is my opinion, therefore, that on the conceded facts, no ambiguity appearing in the documentary evidence requiring the taking of testimony, that plaintiff should succeed.

Judgment for plaintiff.