**F. A. JOHNSON et al. v. W. A. THOMAS, Collector of Internal Revenue, et al.**

No. 3671—927.

District Court, N. D. Texas, Dallas Division.

Nov. 4, 1936.

See, also, 16 F.Supp. 1013; 16 F.Supp. 1019.

J. Cleo Thompson and Edward C. Meek, both of Dallas, Tex., for plaintiffs.

W. Madden Hill, Asst. Atty. Gen., for the Attorney General and the Railroad Commission.

John A. Erhard, Asst. U. S. Atty., of Dallas, Tex., for W. A. Thomas, Collector of Internal Revenue.

Before HUTCHESON, Circuit Judge, and WEST and ATWELL, District Judges.

No. 3671—927.

District Court, N. D. Texas, Dallas Division.

Nov. 11, 1936.

1014

See, also, 16 F.Supp. 1019.

John A. Erhard, Asst. U. S. Atty., of
Dallas, Tex., William McCraw, Atty. Gen.,
and W. J. Holt, Harry S. Pollard, and W.
Madden Hill, Asst. Attys. Gen., for the motion.

J. Cleo Thompson and Edward C. Meek,
both of Dallas, Tex., opposed.

ATWELL, District Judge.

On August 19, 1936, F. A. and R. L.
Johnson brought their bill against S. G.
Gentry and W. A. Thomas, Collector of
Internal Revenue, alleging:

That all the parties resided in Dallas
county, Tex. That Thomas was made a party because he was asserting a claim in the
amount of $5,517.73 against complainants
and respondent Gentry, and that he has
failed and refused to impress or foreclose
his lien upon the property of Gentry, which,
it was alleged, consisted of oil and oil products. "That by reason of his failure to impress his lien and foreclose his lien to satisfy said taxes against the property of the
respondent, Gentry, he is made a party respondent herein, in order that the claim of
United States of America may be judicially determined in the same controversy and
the rights and claims of the United States
of America be finally disposed of."

That Gentry traded under the name of
the Riverside Refining Company, and that
the complainants had executed for him two
refinery bonds. That, by their terms, the
government of the United States was se-

cured in the payment of all gasoline taxes due and to become due it from the Riverside Refining Company upon the gasoline to be processed or manufactured by the plant. That said bonds are valid, subsisting, and binding obligations against the complainants, and that there is now due and unpaid to the United States the said sum of $5,517.73, on which penalties and interest are accruing. "That repeated efforts have been made by the Internal Revenue Department of the United States government and by complainants to have said taxes paid, but that said efforts have been ineffectual; that the government is now demanding that they be paid, but that Gentry fails and refuses to do so. That the Internal Revenue Department is threatening to institute suit against the complainant on said bonds unless payment is made."

It is then alleged:

That Gentry is the owner of two tanks of crude oil in Gregg county, Tex. That he owns no other property. That he has failed and refused to sell said oil or to satisfy the claims of the Collector of Internal Revenue, but permits said oil to remain in the tanks and as a consequence the oil and products are constantly deteriorating and depreciating in value. That the source of the oil is unknown to the complainants, but they allege upon information and belief that it was purchased by Gentry from unknown parties. That the Riverside Refining Company has no assets, but is a mere trade-name used by Gentry. That Gentry is more or less a transient person, moving from place to place trading in oil, and that, if he has assets, he has concealed them. That, unless a receiver is appointed to take charge of the oil for the protection of the petitioners, "and of W. A. Thomas, Collector of Internal Revenue, that Gentry will sell and dispose of it and hide and conceal the assets so as to evade the taxes to the United States Government." They claim that they are entitled to immediate relief, in order to prevent them from suffering irreparable injury. That Gentry has failed and refused to carry fire insurance or lightning insurance on the oil, and that there is danger of the same being destroyed by lightning or fire, "thereby destroying the security of Thomas, Collector of Internal Revenue, and your petitioners."

That they are entitled to an equitable lien against the property in order to secure them in the payment of the obligation to the defendant Thomas, and "likewise the Defendant Thomas as Collector of Internal Revenue, is entitled to an equitable lien against the property and should be required to impress his lien upon said property and thereby compel the principal, Gentry, to discharge his obligation to the United States of America, rather than the surety thereon, and the defendant Thomas, collector of Internal Revenue, having failed and refused to impress his lien and foreclose his lien upon the property of said Gentry, but insisting upon the payment of said application of said Gentry to the United States, to be made and paid by the sureties, has and will cause said petitioners to suffer irreparable injury and damage if they are compelled to pay the obligation of Gentry. That they are entitled to the immediate appointment of a receiver to take charge of said oil in order to prevent a multiplicity of suits and in order to prevent Gentry from concealing or selling the same, resulting in the irreparable injury and damage to them."

They then say they have no adequate remedy at law and that a receiver should be appointed to take charge of said oil and to dispose of same in accordance with the orders of court, "to preserve the equitable rights of your petitioners, and also to preserve the equitable rights of the defendants, United States of America, as well as the rights of the defendant Gentry and others who might have liens against said property."

They then pray that a receiver be appointed to take charge of the oil and that Gentry be enjoined from interfering with the receiver and, "upon final hearing hereof, said receiver be made permanent."

Judge Wilson issued a preliminary injunction against Gentry, restraining him from selling or moving the oil. On August 19, 1936, he issued a show cause order to be heard on August 26 why a receiver should not be appointed, and on August 26, 1936, he appointed John Stephens receiver, ex parte, and set aside the injunction against Gentry. On the 8th day of September, 1936, the receiver reported that he had taken into his possession approximately 110,544 barrels of oil in Gregg county; that there were some rentals against the tanks in which such oil was situated, and that one W. F. Anding claimed to have a mortgage in the sum of $55,000 which Gentry had executed to him (Anding) for the oil; that the oil could be sold for sufficient funds to pay all tax liens of the government and other valid and outstanding liens together with the ex-

pense of the litigation. He recommended that such sale take place, and that "this court issue such orders or requests to the railroad commission of the State of Texas, regarding the tenders for sale and transportation of said oil, to effect such sale by your receiver." On the same day the court ordered the receiver to proceed to sell the same for cash. "And the said receiver, John Stephens, is further ordered to appear before the railroad commission of the State of Texas, and/or the railroad commission tender board at Kilgore, Texas, and to secure from said railroad commission and/or said railroad commission tender board of the State of Texas, a tender and/or necessary certificates of clearance on the crude oil. In order that the sale herein may be consummated without delay the railroad commission of the State of Texas, and/or the railroad commission tender board at Kilgore, Texas, is hereby requested by this court to issue such tenders and/or certificates of clearance to the receiver herein forthwith."

That is the history of the case up to the time the attorneys for the complainant appeared before me stating that it was Judge Wilson's desire, since the case was of the Dallas Division and had arisen during the absence from the district of the judges for the Dallas Division, that they take over the case and handle it. On October 9, 1936, they presented an ancillary bill by the complainants in the original bill, and, by the receiver, in which they complained against the Railroad Commission and the individual members thereof, E. O. Thompson, Lon A. Smith, and C. V. Terrell, and also William McCraw, the Attorney General of Texas. They desired authority to bring suit against the commission and the Attorney General requiring them to issue the tenders and releases called for in the order that Judge Wilson had signed for the sale by the receiver. Such authority was granted.

The ancillary proceeding recited the proceedings I have just detailed, the appointment of the receiver, together with the order of the court, for the sale; the refusal of the commissioners to sign the tender for such sale. It set up certain statutes of the State of Texas, and certain rules and orders made in pursuance thereof by the Railroad Commission of which they complained as being unconstitutional. Particularly they complained of article 6029 of the Revised Statutes of Texas as amended by Acts 1935, c. 76 § 4 (Vernon's Ann.Civ.St. art. 6029) under which the Commission has promulgated a ruling and regulation on August 4, 1934, in which it required that before oil sought to be transported or sold, must be so transported or sold under what is commonly called a tender, and that one who so transported or sold without such tender subjects himself to penalties and fines; that the receiver, having been refused a tender, would be liable to such punishment if he proceeded to obey the order of the court. They also complained of article 6066a of title 102 of Vernon's Annotated Civil Statutes of Texas, and particularly section 10 thereof, under which confiscation of oil is permitted if not protected by the tender. They complain that this particular section is in violation of the due process clause of the Constitution of the United States (Const. Amend. 14).

They allege that they have a right to have the oil sold to pay the tax claim that Gentry owes the government; that they relied upon the statute of the United States which gave the government the right to sell property of defaulting taxpayers; that the refusal of the Railroad Commission to grant the tender to the receiver so that the proceeds of the oil could be used to pay the taxes due the government and thereby discharge them from their liability as sureties, "constitutes an invasion by the State of Texas of the Constitutional powers, rights and privileges of the complainants"; that the action of the commission, "in refusing to grant said tender and their attempted exertion of their right to require tenders to be granted before the receiver can sell, transport, process or refine, is repugnant to the constitution of the United States, and particularly violates article 1, section 8, thereof"; that the refusal of the commission to grant the tender further constituted "an invasion of the constitutional rights * * * to have property of said Gentry first sold to pay taxes due by him, * * * and constitutes a taking of the property of Gentry and the property rights of complainants without due process of law, in violation of the Fourteenth Amendment to the Constitution"; that the refusal to grant said tender, "is in controversion of the express provision of article 1, section 8 of the constitution for that said rule and regulations places a burden on the taxing powers of the federal government, in that it prevents said oil from being sold to pay said tax debt, and is, therefore, unconstitutional"; that the receiver cannot sell the said oil without the tender because he could find no purchaser without such protection and the

receiver himself would be subjected to the penalties; that section 10, of article 6066a of Vernon's Annotated Civil Statutes of Texas, is unconstitutional, "for each and all of the reasons heretofore given"; and that the threatened confiscation of oil, by the defendants under said acts of the legislature is unconstitutional," in that it constitutes a taking of property belonging to the federal government and complainants Johnson.

The bill further alleges that the respondents are really acting without authority at law, and that they are unable to respond in damages for such unauthorized acts; that "upon final trial an interlocutory injunction should and ought to be issued restraining the enforcement and operation and execution of article 6066a of Vernon's Ann.Civ.St. Tex. and suspending and restraining the execution of the so-called tender rule and regulation promulgated by the railroad commission."

There were then prayers for a temporary restraining order, a permanent injunction, and for the declaration of the unconstitutionality of section 6066a.

Upon the presentment of the bill the clerk was directed to issue notice to the respondents to show cause why a restraining order should not issue as prayed. Since the laws of Texas and the rules made in pursuance thereof by an executive body were attacked, a Circuit Judge and a District Judge were called.

On November 2, 1936, all parties being present, the three judges denied any preliminary restraint. A few days before the hearing motions were filed and at the hearing presented by the respondent Thomas to dismiss the original suit as to him, he not being a party to the ancillary bill, and by the Railroad Commission and the Attorney General. A suit at law was brought on August 22, 1936, in this court against Gentry and the Johnsons by the United States on the two bonds executed by Gentry as principal and the Johnsons as sureties.

■ It has already been noticed that all of the parties in the main bill are residents of Texas. Jurisdiction in the national court is claimed on the ground that Thomas is the Collector of Internal Revenue. The allegations of the bill show, however, that the bond upon which the complainants were sureties ran to the United States and not to Thomas. Under section 80, of title 28, U.S.C.A., Judicial Code, section 37, it is the duty of the court to dismiss a suit which does not substantially involve a dispute or controversy properly within its jurisdiction. The only claim that is made against Thomas as an United States officer is that he has failed to take steps to impress the lien of the United States upon the oil alleged to be owned by principal Gentry. That suggestion is the merest of shadows. The lien under the law arises from the assessment— from the birth of the tax obligation. The filing of instruments in local counties where the property of the taxpayer is supposed to be located is a remedial step of safety that may or may not be taken by the tax collecting officers. The court has no power to issue an original mandamus such as is suggested in the complaint against Thomas. Mandamus issues out of the national court only for the purpose of protecting its jurisdiction—for assisting in carrying into execution its decree. Tyler County v. Town (C.C.A.) 23 F.(2d) 371; Consumers' Lignite Co. v. Lumberman's Mut. Casualty Co. (D.C.) 5 F.Supp. 794.

■ There is no other assertion made against Thomas, and the prayer of the original bill is only and simply that "the receiver be made permanent." To justify a receiver some final relief in equity must be added. Zuber v. Mining Co. (C.C.) 180 F. 625. It is, itself, a purely ancillary remedy.

■ Nor can it be called an action against the United States, even though there is a complaint against "The United States Government," because the United States has not given its consent to be sued. Really, of course, the United States is the only interested party. It is because of a debt due the United States that the complainants became liable. It is because they have executed a contract to pay the debt of Gentry to the United States that they seek relief. The Congress does not permit any suit for the recovery of taxes, nor for any penalty, fine, nor forfeiture, unless the Commissioner of Internal Revenue so authorizes. Section 143, title 26, U.S.C.A. (now 26 U.S.C.A. §§ 1640, 1645 (d). There is no assertion in the pleading that the Commissioner of Internal Revenue has authorized any proceeding concerning which they complain of Thomas for not having taken action. While a surety on a tax bond, who is required to pay, is subrogated to the rights of the government under the tax lien, Fidelity & Casualty Company of N. Y. v. Massachusetts Mutual Life Insurance Company (C.C.A.) 74 F.(2d) 881, such right accrues

after payment and the authority is no basis for the institution of a suit such as is this one.

■ A surety cannot maintain a proceeding in equity to compel his principal to convey his property to a receiver, to secure him before he has paid the debt, and before recovering judgment and exhausting his remedies at law. 50 C.J. 246. Nor is it thought that a principal quia timet can move the secured into a position of doubtfulness by requiring him to take part in a questionable effort to convert into money property that may not be wholly free from legal claims and penalties. The cases of American Surety Company v. Lewis State Bank, 58 F.(2d) 559, and Glades County v. Detroit Fidelity & Surety Company, 57 F.(2d) 449, by this circuit, were supported by proceedings directly against a fund about which there was no suspicion. True, indeed, it is that the surety is a favorite of equity and that he may, if he fears, secure its aid before he pays, as certainly as he may be subrogated after he pays. But the essence of such relief is the clear conscience and the certainty of an unassailable fund. The doctrine would hardly apply if the principal were holding stolen property and the surety should request the creditor to proceed against that sort of a holding and become a party to its conversion as against the lawful owner.

In the case of Maryland Casualty Company v. Charleston Lead Works (D.C.) 24 F.(2d) 836, the Commissioner of Internal Revenue had assessed the tax, which had become a lien, and the surety executed a bond for an extension of time for payment. The surety brought the suit alleging insolvency of the principal and lack of adequate remedy and demanded that the United States satisfy its contract against the surety by enforcing the lien on the taxpayer's property. It was contended in that case that the United States, though not having given its consent to be sued, could not raise the question because the suit was in fact against the collector. The court held in that case that there was no responsibility on the part of the collector, as a private person. He had done nothing wrong. He was merely acting as a servant of the government, and the court sustained the motion to dismiss the complaint as to the collector. See Stafford Mills v. White (D.C.) 41 F.(2d) 58.

■ I see no equity in the bill as to Thomas. He clearly has no right under the federal statute for the enforcement of tax liens, nor are there any grounds of personal liability such as may be urged against a public official. No contrary rule is asserted by Haylock v. Dunning (D.C.) 14 F.(2d) 321, nor Wilson v. Bowers (D.C.) 14 F.(2d) 976.

■ While the complainants may have an equity against Gentry, both they and Gentry are citizens of Texas and they have no right to enter a national court for its assertion.

It is almost patent—though it be not necessary to so hold—that there is really no controversy between Johnson and Gentry. Their activities as detailed in the bill and in the ancillary bill are entirely harmonious and for the apparent purpose of moving a large quantity of unlawful oil into commerce. Gentry, the alleged owner of the oil and from whom it was taken by the receiver, has never even entered court. He is apparently unconcerned. He is satisfied for the Johnsons to prevail and get the oil sold.

■ To describe Thomas as the collector of internal revenue is not sufficient to give this court jurisdiction. Mathers & Mathers v. Urschel (C.C.A.) 74 F.(2d) 591, 593.

There is no statutory provision which authorizes a suit against him as collector. Rankin Gilmour & Company v. Newton (D.C.) 270 F. 332, 333.

■ "A suit does not have its origin in the laws of the United States, unless it involves a real and substantial controversy respecting the validity, construction, or effect of such laws upon which the determination of the result depends, and that fact must appear by distinct allegations in legal and logical form. It cannot rest upon inference, argument, or anticipated defense." Mathers & Mathers v. Urschel, supra. See, also, Davidson v. Rafferty (D.C.) 34 F.(2d) 700; Id. (C.C.A.) 39 F.(2d) 1022.

■ Attention is called to the fact that there is no justiciable controversy framed in the bill. The only specific prayer is for the appointment of a receiver, and that on final hearing said receiver be made permanent. A receivership alone cannot be the ultimate object of a suit in equity. When such an appointment is made by the chancellor, it is because of the existence of real litigation between the parties, involving rights in property in which it is necessary to take the property into custody in order to preserve and administer it pending disposition of the controversy.

The motion to dismiss must be sustained.